THE STATE OF OHIO, APPELLEE, *v.* DICK, APPELLANT.

(No. 70-226—Decided July 14, 1971.)

164

*Mr. David D. Dowd, Jr.,* prosecuting attorney, for appellee.

*Mr. Jerry P. Hontas,* for appellant.

SCHNEIDER, J. Appellant contends that the trial court committed prejudicial error when it permitted the state to introduce an extra-judicial written confession of an alleged accomplice made in the presence of and implicating the accused after the alleged accomplice had refused to testify.

By permitting the state to read Daniels' confession to the jury as part of its case in chief, the jury was enabled to accept as substantive evidence the unsworn confession which had been denied by the declarant in the first trial, under oath.

Two views presently exist in this country in regard to the admissibility of an extra-judicial prior inconsistent statement.

Under the generally accepted orthodox view, "... a previous statement of the witness, though admissible to impeach, is not evidence of the facts stated. ... When used for that purpose, the statement is hearsay. Its value rests on the credit of the declarant, who was not under oath nor subject to cross-examination, when the statement was made." McCormick on Evidence, 74, Section 39. See, also, 3A Wigmore on Evidence, Section 1018, and cases cited therein.

Wigmore, on the other hand, takes the opposite view as follows:

"(b) It does not follow, however, that prior self-contradictions, when admitted, are to be treated as having no *affirmative testimonial* value, and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the hearsay rule. But the theory of the hearsay rule is that an extrajudicial

statement is rejected because it was made out of court by an absent person not subject to cross-examination. . . . Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve. . . .'' 3A Wigmore on Evidence, Section 1018, at 996.

This court has long adhered to the principle that ''when taken by surprise by the adverse testimony of its own witness, . . . the state may interrogate such witness concerning his prior inconsistent . . . statement . . . for the purpose of refreshing the recollection of the witness, but *not for the purpose of offering substantive evidence against the accused.*'' (Emphasis supplied.) *State* v. *Duffy* (1938), 134 Ohio St. 16, 17. See *Hurley* v. *State* (1888), 46 Ohio St. 320, 322; *State* v. *Minneker* (1971), 27 Ohio St. 2d 155.

The fact that the appellant did not have the opportunity to cross-examine Daniels when the statement was made, nor during the second trial, is sufficient in itself to avoid any consideration of Wigmore's position.

Therefore, to hold that it was proper to read Daniels' confession to the jury as evidence of the truth of the allegations contained therein would ''allow men to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded.'' *Bridges* v. *Wixon* (1944), 326 U. S. 135, 153.

Appellant claims that he was denied his constitutional right of confrontation when, after Daniels refused to testify, the trial court permitted the state to introduce the cross-examination of Daniels taken at the first trial.

We agree with the state's contention that Daniels' refusal to testify on the grounds that he would be violating his privilege against self-incrimination was ill-founded. Daniels' refusal to be sworn (*In re Groban* [1955], 164

Ohio St. 26), and the fact that he had already pleaded guilty to a charge arising from the same incident as to which he was being questioned (*United States* v. *Cioffi* [1957], 242 F. 2d 473; *United States* v. *Romero* [1957], 249 F. 2d 371), negated his invocation of the privilege. We cannot, however, agree that the burden was upon appellant to put questions to Daniels and to compel answers by him. Therefore, it does not follow that the state had the right to introduce Daniels' former testimony merely to obviate a claim by appellant that he was denied the right of confrontation.

As part of its case in chief, the state had the burden of showing a valid excuse for the non-production of Daniels. For, "... the validity of the excuse for non-production lies upon the party seeking to introduce the former testimony." Paragraph one of the syllabus of *New York Central Rd. Co.* v. *Stevens* (1933), 126 Ohio St. 395.

With Daniels being available and competent to testify, it was error to allow the record of the cross-examination of Daniels at the first trial to be introduced at the second trial as the foundation for the introduction of the otherwise inadmissible extra-judicial statement.

Whether the admission of the statement was prejudicial depends upon a consideration of appellant's second contention, which is that the trial court erred in overruling appellant's motion for a directed verdict on the basis of the state's failure to identify the appellant as the perpetrator of the offenses for which he was charged.

Testimony of the three victims showed that each was raped twice; however, only a voice identification by one of them was offered to connect the appellant to the crimes for which he was charged.

The opportunity for suggestion inherent in the procedure used by the police to secure the voice identification lends little credence to the state's attempt to connect that voice identification to the appellant.

Before listening to the voice in response to the detectives in the police station, one of the victims had been told to appear to make an identification of the suspect. "Any identification process, of course, involves the danger that

the percipient may be influenced by prior formed attitudes.
. . ." *Palmer* v. *Peyton* (1966), 359 F. 2d 199, 201. This
is especially so when the identifier, as in the instant case,
is presented with no alternative choices.

Normal police procedure requires the call of a lineup
to assure appellant of his rights. This device was not used.
In their "understandable zeal to secure an identification,"
by not allowing a comparison of voices, the police "destroy-
ed the possibility of an objective, impartial judgment" by
the victim as to whether the accused's voice was in fact
that of the man who attacked her. *Palmer* v. *Peyton, supra*
(359 F. 2d 199, 202).

Without the confession *and* absent any in-court identi-
fication by the victim, it is questionable whether the voice
identification, standing alone, was of sufficient probative
value to have permitted the jury to find the accused guilty
beyond a reasonable doubt.

The state, in a further attempt to connect the accused
with the crimes, presented testimony of the three victims
to show that the crimes followed a similar plan, system and
methodology.

In *State* v. *Carter* (1971), 26 Ohio St. 2d 79, 83, this
court held that:

". . . where evidence tending to prove commission by
an accused of a similar act is offered by the state . . . it is
not necessary for the state to establish by proof beyond a
reasonable doubt that the accused was the perpetrator of
the similar act.

"In such case, it is sufficient for the admission of such
evidence that it offers *substantial proof* that the alleged
similar act was committed by the defendant." (Emphasis
supplied.)

In that case, two employees made *positive* in-court
identifications of the accused. In the instant case, two of
the three victims could not identify the accused whatsoever.
The single-voice identification did not offer "substantial
proof" that the alleged similar act was committed by the
defendant.

Thus, in the absence of any "substantial proof" to

connect the appellant to the offenses for which he was charged, we find that the trial court committed prejudicial error in allowing the state to introduce an extra-judicial, unsworn, signed statement of a witness as proof of the allegations contained therein. The judgment of the Court of Appeals is reversed and the cause remanded for further proceedings in accordance with law.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.