OPINION
{¶ 1} Diondray Beal appeals from his conviction for aggravated robbery with a *Page 2 
firearm specification after a jury trial in Clark County. On November 28, 2006 in mid-afternoon, a young black male wearing a ski mask entered the First American Cash Advance store in Springfield and held it up. Amanda Pyles, who worked at the store, stated the robber pointed a revolver at her head and demanded she give him money. She testified she gave the robber approximately three hundred dollars in cash. She described the robber as a young, thin black male possibly six feet tall wearing a black ski mask and a hooded sweatshirt.
 {¶ 2} Jonathan Bisdorf was picking his wife up from work at Med Assist which is located caddy corner from the cash advance store when he saw an individual wearing a ski mask enter the store and pull out a gun and demand money from the clerk. Bisdorf said the robber ran out the front door down an alley and got into a car. Bisdorf described the individual as a black male of average height and weight. Bisdorf stated the weapon appeared to be a revolver. Bisdorf stated the robber entered a gold Dodge Stratus on the passenger side of the vehicle. He did not know if the robber entered the front or rear of the vehicle. Bisdorf said there were two other individuals in the vehicle, one in the driver's seat and one in the backseat. (T. 100.) Bisdorf stated he provided police with a description of the suspect and the vehicle in which he was riding.
 {¶ 3} Clark County Sheriff's Deputy Brian Malicki testified he responded to the dispatch concerning the robbery and observed the suspect's Dodge Stratus heading east on Main Street. Malicki testified he gave chase and eventually caught the vehicle and the suspects when their car struck a fence in a residential area. Malicki testified that the suspect in the front passenger seat and the suspect in the rear passenger seat fled in one direction and the driver in another. Malicki testified he believed Beal exited the front *Page 3 
passenger seat after the vehicle struck the fence after the chase. He also testified that he recovered an unloaded revolver on the back seat of the vehicle behind the driver and a bullet in a shirt near the revolver.
 {¶ 4} Deputy Ralph Underwood testified he arrested Beal who was hiding in a van in a driveway nearby. Sergeant Jeffrey Flores testified he recovered one hundred eighty-five dollars ($185) and a black "doo rag" mask from Beal after his arrest. The third suspect, a juvenile, Dontez McWhorter, was arrested in the house next to the van.
 {¶ 5} Dontez McWhorter testified for the State that it was he who went into the store and robbed the clerk. McWhorter testified that he went to the cash advance store to rob it. He testified Brandon Dearmond drove his cousin's car and Beal rode in the front passenger seat. McWhorter testified he changed his pants after the robbery and left the money in the pants which he discarded in the house in which he was arrested. McWhorter admitted he originally told the police that it was Beal who entered the store and robbed it. McWhorter testified he did not remember whether he discussed robbing the store with Beal and Dearmond before robbing it.
 {¶ 6} In his first assignment, Beal contends his conviction was based upon insufficient evidence. He contends that although there was strong evidence that the driver Dearmond was an accomplice, he was merely present in Dearmond's car as a passenger and he committed no overt act in furtherance of the robbery.
 {¶ 7} Evidence is insufficient to support a conviction if no rational juror could find the defendant guilty beyond a reasonable doubt viewing the State's evidence in light favorable to it. State v. Jenks (1991),61 Ohio St.3d 259, 278, 574 N.E.2d 492. Beal was captured fleeing the police shortly after the robbery. Police recovered $185 and a black *Page 4 
"doo rag" mask from Beal. A juror may infer guilt from Beal's flight from the scene of the crime. There was evidence that the getaway vehicle driven by Dearmond was parked behind the store that was robbed and that Beal was in the front passenger seat. The jury could infer from the evidence that either Beal was the robber seen by Mr. Bisdorf or the lookout seated in the front seat of the vehicle. The jury could find from this evidence that Beal was an active participant in the robbery. The first assignment of error is Overruled.
 {¶ 8} In his second assignment, Beal contends the trial court erred in overruling his challenge for cause of a juror. During voir dire, prospective juror Larimore expressed the following to defense counsel:
 {¶ 9} "MS LARIMORE: I don't know what the reason why your client was with them or in the car, I don't know, I wasn't there. But whatever the age of the juvenile is, he knows right from wrong. If he's in a vehicle, I don't know what you guys are doing, but at sometime or another, either before it occurs or after, he would have to say I have to get out of here. I just-
 {¶ 10} "MR. SMITH: I think Mr. Morris may have used this example in one of his questions. Something about when you're with somebody and they do something wrong, okay, if we're together, us three, we're all together, and she does something wrong, are you going to hold me responsible because I'm with her, even if I didn't do anything?
 {¶ 11} "MS. LARIMORE: No. But you're saying if she had said something wrong or did something wrong as far as throwing a rock and breaking a window, that doesn't make you guilty. That makes her doing wrong. But in any instance, you have three individuals knowing right from wrong in a vehicle, they have a choice.
 {¶ 12} "MR. SMITH: If he can't get out, does that make him guilty? *Page 5 
 {¶ 13} "MS. LARIMORE: That makes him liable.
 {¶ 14} "MR. SMITH: What do you mean liable?
 {¶ 15} "MS. LARIMORE: I've always preached to my kids, if you get in a car and someone's been drinking and driving, that makes you just as guilty. You were there. You could have stopped that individual. That's how I feel. That doesn't make him guilty or not guilty. You know what, they were in a car, he could have gotten out while they were there.
 {¶ 16} "MR. MORRIS: Let me ask you a question. If someone hops out of a car do you feel the other should have gotten out?
 {¶ 17} "MS. LARIMORE: I don't understand.
 {¶ 18} "MR. MORRIS: Do you feel he should have gotten out? Even the driver?
 {¶ 19} "MS. LARIMORE: Yes.
 {¶ 20} "MR. MORRIS: What do they do then?
 {¶ 21} "MS. LARIMORE: They walk.
 {¶ 22} "MR. SMITH: Okay.
 {¶ 23} "MS. LARIMORE: This is just how I feel. I just don't want to condemn somebody one way or the other if they had the choice to leave at some point in time.
 {¶ 24} "MR. SMITH: To determine guilt or innocence?
 {¶ 25} "MS. LARIMORE: I know I have to weigh the evidence.
 {¶ 26} "MR. SMITH: You have to lay aside your personal feelings.
 {¶ 27} "MS. LARIMORE: I understand.
 {¶ 28} "MR. SMITH: And go by what the Judge says and use the legal instructions that the Judge will give you to apply those legal instructions to the evidence and determine guilty or not guilty that way. *Page 6 
 {¶ 29} "MS. LARIMORE: Okay.
 {¶ 30} "MR. SMITH: Not by personal examples. And that may be difficult to do. I don't know.
 {¶ 31} "MS. LARIMORE: I think it might be.
 {¶ 32} "MR. SMITH: Yeah, it might be.
 {¶ 33} "MS. LARIMORE: I was just trying to be honest with you guys.
 {¶ 34} "MR. SMITH: I appreciate that. Do you think you could do that?
 {¶ 35} "MS. LARIMORE: I think it would be hard. You're borrowing your cousin's car. You're not looking in the back seat of the car to see what's in it. It's just I preach to my kids all the time, you have to know your surroundings. You have to know who you're with.
 {¶ 36} "MR. SMITH: It's good that you do that. I would probably be preaching the same way myself.
 {¶ 37} "MS. LARIMORE: I just want to be honest.
 {¶ 38} "MR. SMITH: Do [you] get a pretty good feeling, are you able to follow the Court's instructions?
 {¶ 39} "MS. LARIMORE: I will do as I'm told. I don't want my beliefs to those — one way or the other — I don't know what I'm trying to say.
 {¶ 40} "MR. SMITH: Okay. With all this being said, you still think you're an appropriate juror?
 {¶ 41} "MS. LARIMORE: I think it will be hard for me, I do.
 {¶ 42} "MR. SMITH: Does that mean you don't think you'll be an appropriate juror?
 {¶ 43} "MS. LARIMORE: I'm not going to be inappropriate. I'm just saying if I'm a *Page 7 
juror, I'm going to do the best to weigh the evidence.
 {¶ 44} "THE COURT: Thank you, very much."
 {¶ 45} In overruling Beal's challenge for cause, the trial court stated that while Ms. Larimore indicated it would be difficult to be an appropriate juror, she would follow the law and as such the challenge must be overruled.
 {¶ 46} Ohio law provides that a juror may be challenged for cause if "he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." R.C. 2313.42(J). A reviewing court will not disturb a trial judge's ruling regarding a juror's ability to be impartial "unless it is manifestly arbitrary * * * so as to constitute an abuse of discretion." State v.Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 106. Abuse of discretion has been defined by the Supreme Court of Ohio as "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 47} We agree with the State that Beal failed to demonstrate from this record that the trial court abused its discretion in overruling Beal's challenge to Ms. Larimore for cause. Ms. Larimore stated she would do her best to weigh the evidence presented at trial and she would follow the court's instructions on the law that applied in this matter. The Appellant's second assignment of error is Overruled.
 {¶ 48} In his third assignment, Beal contends the trial court committed plain error in permitting the prosecutor to argue facts not in evidence. Beal fails to identify with any particularity the alleged improper argument. The prosecutor did not argue that the jury should consider Dontez McWhorter's prior admission to police as evidence of McWhorter's *Page 8 
guilt. The prosecutor merely argued that McWhorter's testimony was not supported by the evidence. The prosecutor did improperly state he did not believe parts of McWhorter's testimony, but the court immediately admonished the jury that counsel's beliefs were not relevant and such a statement by him was improper. The prosecutor then immediately reminded the jury they should assess the credibility of McWhorter's testimony by reviewing all the testimony, particularly that given by disinterested parties. (T. 322.) The prosecutor reminded the jury they were "the finders of fact not me." (T. 329.) Plain errors "affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim. R. 52(B). "The standard for plain error is whether substantial rights of the accused are so adversely affected as to undermine the fairness of the guilt determining process." State v.Swanson (1984), 16 Ohio App.3d 375, 377, 476 N.E.2d 672. The prosecutor should not have expressed his belief that McWhorter was lying, but the court immediately admonished him and instructed the jury to disregard the prosecutor's statement. Also, the prosecutor's statement was made after he reviewed the evidence with the jury. His remark did not undermine the fairness of Beal's trial or undermine confidence in the proceedings. See State v. Stover (1982), 8 Ohio App.3d 179, 183,456 N.E.2d 833. The third assignment of error is Overruled.
 {¶ 49} In his fourth assignment, Beal argues the trial court erred in permitting McWhorter to testify about his prior inconsistent statement to police that Beal was the one who entered the store and robbed it. Beal argues that although this testimony was admissible to impeach McWhorter's trial testimony, it should not have been admitted because its probative value was outweighed by its prejudicial effect since the issue of the identity of the principal was dispositive of the case. Beal argues the jury could not have *Page 9 
accepted the testimony based on the subtle distinction between evidence used only for impeachment and not as substantive evidence.
 {¶ 50} The State argues that Evid. R. 613(B) would serve no purpose if Beal's argument is accepted by this court. Also, the State notes that the jury was instructed on the limited purpose McWhorter's prior statement to police was permitted. Lastly, the State argues that jurors must be presumed to follow the court's instructions.
 {¶ 51} Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. Evid. R. 403(A). The discretion of the judge in applying Evid. R. 403 is extensive.State v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, at ¶ 60-66. A trial judge should determine whether a limiting instruction will sufficiently diminish the danger of an adverse effect. See State v.Allen (1995), 73 Ohio St.3d 626, 632-633, 653 N.E.2d 675. Unfair prejudice is that quality of the evidence which might result in an improper basis for a jury decision. See cases cited in Weissenberger,Ohio Evidence Treatise (2007)109. The trial court did instruct the jury concerning the limited purpose McWhorter's prior inconsistent statement could be considered by them. (T. 338.) We cannot say that the trial court abused its discretion in admitting McWhorter's prior inconsistent statement. We do not find the admission of this testimony unfairly prejudiced Beal. The fourth assignment of error is Overruled.
 {¶ 52} In his final assignment, Beal argues the trial judge committed plain error in instructing the jury on accomplice liability. Beal contends the trial judge instructed the jury that mere presence at the crime scene during the commission of the crime is not "necessarily" complicity. Beal contends this "watered down" statement by the court could have negatively impacted the jury's deliberation on the crucial issue in the case. The trial *Page 10 
court instructed the jury as follows:
 {¶ 53} "Accomplice: When two or more persons have a common purpose to commit a crime and one does one part and another performs the other part, both are equally guilty of the offense. One who purposely aids, helps, or assists another to commit a crime is regarded by law as an accomplice to that offense and is treated as if they were the principal offender. This includes the issue of the firearm specification.
 {¶ 54} "Aiding and abetting contains two basic elements: An act on the part of the Defendant contributing to the execution of a crime and the intent to aid in its commission. Both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity. Mere presence during the commission of a crime, however, does not necessarily amount to being an accomplice. Indeed, mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting or the act. Being present during the commission of a crime, absent some preceding connection with the transaction or conspiracy is not aiding or abetting.
 {¶ 55} "Aid means to help, assist, or strengthen.
 {¶ 56} "Abet means to encourage, counsel, incite, or assist."
 {¶ 57} The Ohio Supreme Court has held that mere presence of an accused at the scene of a crime is not sufficient to prove in and of itself that the accused was an aider and abettor. State v. Widner
(1982), 69 Ohio St.2d 267, 269, 432 N.E.2d 1025. "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." State v.Johnson (2001), 93 Ohio St.3d 240, 243, 754 N.E.2d 796. The trial court should have left out the word "necessarily." There was, *Page 11 
however, no objection to the instruction as given and plain error in an instruction is not grounds for reversal "unless, but for the error, the outcome of the trial clearly would have been otherwise." C.f. State v.Long (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804. We cannot say the result would have been otherwise had the word "necessarily" been left out of the instruction. It is important to note the court made it clear to the jury that the defendant was required to have engaged in some active participation in the crime charged before he could be convicted as an accomplice. The fifth assignment of error is Overruled. Judgment of the trial court is Affirmed.
WOLFF, P.J., and DONOVAN, J., concur.
Copies mailed to:
Andrew R. Picek
Darrell L. Heckman
 Hon. Richard J. O'Neill *Page 1