The STATE of Ohio, Appellee,

v.

DEARMOND, Appellant.

[Cite as *State v. Dearmond,* 179 Ohio App.3d 63, 2008-Ohio-5519.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2007 CA 93.

Decided Oct. 24, 2008.

---

6. R.C. 2929.28(A)(2)(a)(v).

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

Ronald R. Boblitt, for appellant.

---

DONOVAN, Judge.

{¶ 1} This matter is before the court on the notice of appeal of Brandon Dearmond, filed August 20, 2007. Following a trial to a jury in two consolidated cases, Dearmond was convicted, in case No. 2006 CR 1422, of aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree, with a firearm specification. Dearmond was also convicted, in case No. 2006 CR 1404, of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, a felony of the third degree, with a firearm specification and the following additional specifications: (1) in committing the offense, Dearmond was fleeing immediately after the commission of a felony and (2) the operation of the motor vehicle by Dearmond caused a substantial risk of serious physical harm to persons or property. Dearmond was sentenced to eight years for aggravated robbery and to four years for failure to comply with an order or signal of a police officer. The trial court merged the three-year sentences on the firearm specifications and ordered that the sentences in each case be served consecutively, for a total sentence of 15 years.

{¶ 2} The events giving rise to this matter began on November 28, 2006, while Amanda Pyles was working as a clerk at First American Cash Advance ("Cash Advance") at the Burnett Road Plaza in Springfield, Ohio. A masked gunman, Diondray Beal, entered the premises, pointed a gun at Pyles, and demanded

money. Pyles emptied her drawer on the counter, the gunman seized the money, and he fled to a waiting vehicle driven by Dearmond. Dontez McWhorter was in the backseat of the vehicle.

{¶ 3} After being alerted to the robbery, Clark County Sheriff's Deputy Brian Malicki observed a vehicle matching the description of the one seen fleeing the scene of the robbery, and Malicki initiated pursuit. Following a short chase, Dearmond lost control of the vehicle while turning left from Bellevue Avenue to Hoppes Avenue, crashing into a chain-link fence that surrounded the yard of a residence. All three occupants exited the vehicle and fled on foot. Malicki, along with Springfield Police Officer Randall Ballentine, who also responded to the scene, chased and apprehended Dearmond shortly thereafter. McWhorter was later apprehended inside a residence at 928 Bellevue Avenue, and Beal was apprehended in a van parked in the driveway of the residence, where a witness had observed them flee.

{¶ 4} McWhorter, a juvenile, pleaded guilty to aggravated robbery and was residing at the Department of Youth Services at the time of Dearmond's and Beal's trial. When called by the state to testify, McWhorter provided testimony that was inconsistent with prior statements he had given to police. At trial, McWhorter testified that he, and not Beal, entered Cash Advance with a firearm and committed the robbery. The prosecutor asked McWhorter about the content of his prior inconsistent statements to police, and upon Beal's objection, a sidebar conference was held. The prosecutor argued, "His statement to the police has varied significantly to what he's saying now. He told the police he didn't go in. He told the police that Mr. Beal went in, that they discussed it before he went in. He told the police that he never handled the gun and never handled the money. * * * I believe I'm able to impeach my own witness if he's surprising me with testimony that's not consistent to what he told the police before and what's on the video. He's telling me he can't remember. But in calling him to the stand and the statement made on the video, the discussion of what he said and how it went down another way prior to today, he said he hasn't—he's made claims to the fact he can't remember, and I've gone over the video with him, prior to today, today's the first day he admitted he did this." The trial court responded, "So he's being surprised. He can impeach his witness. You're overruled."

{¶ 5} McWhorter testified that he was lying to the police when he told them that he, Beal, and Dearmond discussed the robbery ahead of time. McWhorter also testified that he was lying to the police when he told them that Beal committed the robbery. In response to questions from counsel for Dearmond, McWhorter testified that the robbery was his idea and that no one aided him in committing the robbery.

{¶ 6} Counsel for Dearmond was silent during the sidebar conference regarding impeachment. In the course of several questions about McWhorter's conversation with defendants prior to the robbery, counsel for Dearmond objected as follows:

{¶ 7} "Q. Do you remember if there was a conversation or wasn't?

{¶ 8} "A. Probably was a conversation but I don't remember what was said.

{¶ 9} "Q. I'm sorry. So there was a conversation in the car?

{¶ 10} "A. I'm not saying there wasn't. I'm saying I don't remember.

{¶ 11} "Q. I guess what I'm asking Dontez, is what do you remember about a conversation before—

{¶ 12} "Mr. Morris: Your honor, I'm going to object.

{¶ 13} "The Court: Overruled.

{¶ 14} " * * *

{¶ 15} "Q. Did you tell Mr. Beal or Mr. Dearmond why you wanted to go to the Cash Advance?

{¶ 16} "A. No.

{¶ 17} "Q. No? Did Mr. Beal and Mr. Dearmond have any reason to know that you were there to rob the place?

{¶ 18} " * * *

{¶ 19} "Mr. Morris: I object.

{¶ 20} "The Court: He can answer if he knows."

{¶ 21} The trial court later instructed the jury as follows: "Evidence was admitted that witness Dontez McWhorter made statements to the police which were inconsistent with his trial testimony. That evidence as to those prior statements was admitted for a limited purpose only. It was not received, and you may not consider it to prove that what he told the police was, in fact, true. If you find that the witness made those statements, you may consider that evidence only for the purpose of testing that witness' credibility, or believability, and the weight to be given his testimony. It may not be considered for any other purpose."

{¶ 22} Dearmond asserts two assignments of error. His first assignment of error is as follows:

{¶ 23} "The trial court erred by abusing its discretion with attendant material prejudice of appellant when it permitted the state to impeach its witness in contravention of Evidence Rule 607."

{¶ 24} According to Dearmond, the trial court "abused its discretion when it permitted the State to impeach its witness for prior inconsistent statement contrary to the common law rule requiring surprise and affirmative damage." The state responds that Dearmond failed to preserve the issue for appeal, since "neither of [Dearmond's] two objections are clearly related to the State's impeaching its own witness but rather appear directed to two specific questions posed by the State." The state also argues that surprise and affirmative damage were demonstrated, since "the State was forced to change its trial strategy mid-trial and argue in the alternative at closing because of McWhorter's surprise trial testimony. The State's theory had always been that Diondray Beal was the principal robber." The state argues that even if the trial court did err in allowing it to impeach McWhorter, the outcome of the trial would not have been different, given the ample circumstantial evidence that Dearmond participated in the robbery as the getaway driver. Further, the state argues that the jury must be presumed to follow the trial court's instructions. Finally, the state notes that we previously determined that the admission of McWhorter's inconsistent statement was proper in *State v. Beal,* Clark App. No. 07–CA–86, 2008-Ohio-4007, 2008 WL 3165924 (holding that admission of McWhorter's prior statement did not unfairly prejudice Beal).

{¶ 25} Evid.R. 607(A) provides, "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.  * * * "

{¶ 26} "It is the generally accepted view that a prior inconsistent statement is only admissible to impeach the declarant and should not be taken into evidence to prove the truth of the matter asserted. Ohio has long adhered to this general principle.  * * * [T]he Ohio Supreme Court has said that ' "when taken by surprise by the adverse testimony of its own witness, * * * the state may interrogate such witness concerning his prior inconsistent * * * statement * * * for the purpose of refreshing the recollection of the witness, but not for the purpose of offering substantive evidence against the accused." ' *State v. Dick* (1971), 27 Ohio St.2d 162, 165, 56 O.O.2d 101, 271 N.E.2d 797, 799 (quoting *State v. Duffy* (1938), 134 Ohio St. 16, 17, 11 O.O. 383, 15 N.E.2d 535, 536). Indeed, to allow prior inconsistent statements to be considered for their truth would 'allow men to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded.' *Bridges v. Wixon* (194[5]), 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103." *State v. English,* Montgomery App. No. 21915, 2007-Ohio-5979, 2007 WL 3309637.

{¶ 27} "It is within the broad discretion of a trial court to determine whether a party is taken by surprise by the testimony of a witness called by that

party, so as to permit that party to impeach its own witness. The evident purpose of this rule is to prevent a party from calling a witness with the sole purpose of impeaching that witness by her prior, out-of-court statements, which would otherwise be inadmissible. 'Otherwise [i.e., but for Evid. R. 607(A)], the party would be entitled to call a known adverse witness simply for the purpose of getting a prior inconsistent statement into evidence by way of impeachment thus doing indirectly what he could not have done directly.' " (Citations omitted.) *State v. Foster*, Greene App. No. 2004–CA–19, 2005-Ohio-439, 2005 WL 281163, quoting Staff Note to Evid.R. 607.

{¶ 28} "Ordinarily, 'surprise,' under Evid.R. 607(A), can be shown if the testimony is materially inconsistent with a prior written statement and counsel did not have reason to believe that the witness would recant. * * * And 'affirmative damage' is established when the witness testifies to facts which contradict, deny, or harm the trial position of the party calling the witness." *State v. Nolan* (Mar. 10, 2000), Clark App. No. 99–CA–24, 2000 WL 262658, *2.

{¶ 29} Having reviewed the record, we conclude that while Dearmond's objections were limited, they were sufficient to preserve the issue of McWhorter's impeachment for appellate purposes. We further find that the trial court did not abuse its discretion in allowing the state to impeach McWhorter. The record before us reveals surprise and affirmative damage. The state expected McWhorter to testify, consistent with his prior statements to police and consistent with the theory of the state's case, that Beal committed the robbery, but McWhorter unexpectedly admitted his own guilt and denied Beal's, in contradiction of the state's position. The trial court provided an appropriate instruction limiting the jury's consideration of McWhorter's prior statements to the issue of his credibility, and the jury is presumed to follow the trial court's instructions. *State v. Garner* (1995), 74 Ohio St.3d 49, 59, 656 N.E.2d 623. Finally, even if we were to conclude that the trial court committed plain error in allowing the state to impeach McWhorter, the outcome of the trial would not have been otherwise; Dearmond was apprehended by police after fleeing from them following a robbery. There being no merit to Dearmond's first assignment of error, it is overruled.

{¶ 30} Dearmond's second assignment of error is as follows:

{¶ 31} "The trial court erred in upholding appellant's conviction for felony-fleeing (sic) and eluding."

{¶ 32} According to Dearmond, but for his felony aggravated-robbery conviction, his fleeing offense would have been a misdemeanor, pursuant to R.C. 4511.

{¶ 33} Dearmond was convicted pursuant to R.C. 2921.331(B), which provides:

{¶ 34} "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

{¶ 35} " * * *

{¶ 36} "(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

{¶ 37} " * * *

{¶ 38} "(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."

{¶ 39} The trial court did not err in convicting Dearmond of failure to comply with an order or signal of a police officer, a felony of the third degree, since the jury specifically found that Dearmond's operation of the vehicle caused a substantial risk of serious physical harm. There being no merit to Dearmond's second assignment of error, it is overruled.

Judgment affirmed.

WOLFF, P.J., and BROGAN, J., concur.