[Cite as *In re K.S.*, 2012-Ohio-2388.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.    97343

# IN RE: K.S.

# A Minor Child

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 10123183

**BEFORE:**   E. Gallagher, J., Boyle, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    May 31, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Sheryl A. Trzaska
Assistant Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio    43215

**ATTORNEYS FOR APPELLEE, C.S.E.A.**

William D. Mason
Cuyahoga County Prosecutor
BY:    Fallon Radigan
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

EILEEN A. GALLAGHER, J.:

{¶1} Appellant, K.S., appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, that adjudicated him delinquent and committed him to the custody of the Ohio Department of Youth Services ("ODYS"). For the following reasons, we reverse and remand.

{¶2} On December 9, 2010, a delinquency complaint was filed against appellant, then a 14-year-old child, alleging that he was delinquent for having committed acts that if committed by an adult, would constitute six counts of felonious assault, one count of improperly discharging into a habitation, and two counts of receiving stolen property. Each count contained one-, three- and five-year firearm specifications. K.S. denied the allegations in the complaint and the case proceeded to trial.

{¶3} It was the state's evidence at trial that on the evening of August 23, 2010, Elizabeth Ensley's dark green 2000 Dodge Caravan was stolen. Additionally, Linton Patrick's burgundy 1996 Grand Cherokee was stolen the same evening. Christine Cummings testified that she resides at 14409 Glendale in Cuyahoga County with her husband, Richard Adams, her three sons, M.C., K.C. and A.C., her daughter C.C. and her grandson, K.C. On the night of August 23, 2010, Cummings testified that from her porch, she saw M.C. being chased back to the house by two boys. M.C. identified one

of the boys as D.H. and testified that an argument arose while M.C. was returning home from a store three blocks from the house. The two boys left the area but returned on foot and fired gunshots into the house.

{¶4} Cummings called the police who responded after the boys had left the scene. No one was injured as a result of the initial shooting. Later that evening, Cummings was on the porch with Adams when a green van pulled up in front of the house and gunshots were fired into the house from the passenger side of the van. Cummings's right arm was grazed by a bullet and Adams testified that he heard a bullet pass near his head. Neither Cummings nor Adams saw the face of the shooter.

{¶5} Cleveland Police officer Robert Norman witnessed the drive-by shooting from his zone car and pursued the van. Officer Norman testified that the van parked several streets away and three or four black, male teenagers exited the van and entered a burgundy Jeep Cherokee. Norman and his partner attempted to stop the Jeep and the occupants fled on foot. Officers pursued the driver and the passenger who was holding a gun. The gunman eluded arrest and Officer Norman did not see his face. The officers did arrest the driver of the Jeep, Ramone Taylor. The van and the Jeep were recovered and identified as the stolen vehicles belonging to Ensley and Patrick. Upon questioning, Taylor provided the police with the name Jermain Kurtrell as the shooter. Taylor was charged, adjudicated delinquent and committed to ODYS for one year for his role as the driver of the vehicle involved in the shooting. The day prior to his

sentencing for his involvement in the drive-by shooting, Taylor provided police with a written statement, naming K.S. as the shooter. Taylor's statement further implicated K.S. in the theft of both vehicles.

{¶6} Prior to trial, the state filed a "motion in limine to call adverse and/or court's witnesses for purposes of cross-examination" pursuant to Evid.R. 611(C) in that they anticipated Taylor was not going to testify consistent with his written statement.

{¶7} At trial, Taylor recanted his written statement and denied any involvement by K.S. in the shooting. Taylor testified that the shooter's true name was "Devonte." Taylor testified that he and K.S. were friends. Taylor explained that he spoke with K.S. after his arrest and K.S. agreed to allow Taylor to name him as the shooter because K.S. was "already going down" for other juvenile offenses. Taylor was motivated to provide police with the name K.S. anticipating that he would receive favorable treatment at his sentencing the following day. In fact, rather than a sentence of "like four years," Taylor's order of commitment of one year was imposed without objection by the state or its agents. However, Taylor testified at trial that he didn't understand the severity of the charges and detention time that K.S. would face and no longer desired to go through with the plan they had devised.

{¶8} K.S. and his sister, P.S., testified that they had spent the evening of August 23, 2010 at their home, located at 14109 Edgewood and that K.S. did not leave the home that night. Both testified that Taylor was present at the house earlier in the day but

that he left after receiving a phone call.

{¶9}   At the conclusion of trial, the trial court, sua sponte, nolled the three firearm specifications attached to count 8, one of the counts of receiving stolen property. The trial court adjudicated appellant delinquent on three counts of felonious assault, improperly discharging into a habitation and two counts of   receiving stolen property. The trial court found the remaining counts of felonious assault had not been proven beyond a reasonable doubt and adjudicated appellant not delinquent with respect to those counts.   The trial court held a dispositional hearing on June 15, 2011 and committed appellant to the legal custody of the ODYS for an indefinite term consisting of a minimum period of twelve months and a maximum period not to exceed appellant's attainment of the age of 21 years.   The trial court further found that appellant, if an adult, would be guilty of a specification of the type set forth in R.C. 2941.141 and 2941.145, merged the two specifications and ordered appellant committed to ODYS for an additional one year pursuant to R.C. 2152.17(A).   Finally, the trial court found that appellant, if an adult, would be guilty of a specification of the type set forth in R.C. 2941.146 and ordered appellant committed to ODYS for an additional one year pursuant to R.C. 2152.17(A)(3).   Appellant's three one-year commitments were ordered to be served consecutive to one another.

{¶10}    Appellant's first assignment of error states:

The trial court erred when it permitted the State to impeach its witness with
a prior inconsistent statement, and when it admitted that statement into

evidence.

{¶11} In the state's pretrial "motion in limine to call adverse and/or court's witnesses for purposes of cross-examination," the state suggested that Ramone Taylor had adopted an uncooperative attitude toward the prosecuting attorneys and "has changed his story and has stated that he does not want to testify against his friend, [K.S.]" The state asserted that "[i]mportant to determining the credibility of the witness, the state must be able to elicit: 1) the degree of the relationship [Taylor] has with [K.S.]; and 2) any relevant prior statements the witness has made."

{¶12} The state called Ramone Taylor as a witness and was allowed by the trial court to impeach his testimony by reading his entire prior written statement. Over the objection of appellant's trial counsel, the trial court labeled Taylor a "hostile witness" to the state.[1] Furthermore, over the objection of appellant's trial counsel, the trial court admitted Taylor's prior written statement, in the form of an exhibit.

{¶13} Generally, evidentiary rulings made at trial rest within the sound discretion of the trial court. *State v. Lundy*, 41 Ohio App.3d 163, 535 N.E.2d 664 (1st Dist. 1987); *State v. Graham*, 58 Ohio St.2d 350, 390 N.E.2d 805 (1979). The term "abuse of discretion" connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

---

[1]The state requested that the trial court declare Taylor an "adverse witness."

**{¶14}** Appellant argues that the trial court erred in declaring Taylor a hostile witness, allowing the state to impeach his testimony with his prior written statement and accepting the statement as substantive evidence.

**{¶15}** The record reflects that the trial court treated Taylor as an *adverse* witness to the state as opposed to a *hostile* witness.

> "Traditionally, a 'hostile witness' is one who surprises the calling party at trial by turning against him while testifying. * * * An 'adverse witness' is one who identifies with the opposing party because of a relationship or a common interest in the outcome of the litigation. Many times, the terms 'hostile' and 'adverse' are used interchangeably without drawing a clear distinction between the meaning of the terms." *State v. Darkenwald*, 8th Dist. No. 83440, 2004-Ohio-2693, ¶ 15.

**{¶16}** Evid.R. 611 allows a party to call a hostile witness, an adverse party, or a witness identified with an adverse party and examine the witness with the use of leading questions on direct examination. In the case sub judice, Taylor expressly testified to the association between himself and the appellant and the scheme the two allegedly concocted in order to obtain favorable treatment for Taylor at his sentencing. Under these facts, the trial court accurately identified Taylor as an adverse witness to the state and allowed the prosecutor to question Taylor using leading questions. *See State v. Stearns*, 7 Ohio App.3d 11, 14, 454 N.E.2d 139 (8th Dist. 1982) (Witnesses properly treated as adverse where they were shown to have a strong affinity to the defendant, frequently gave incomplete or evasive answers, and they differed significantly from statements they had previously given to the prosecution.)

{¶17} However, the trial court erred in allowing the state to impeach Taylor's testimony with his prior inconsistent statement. In *Darkenwald*, we explained the fine distinction between "impeaching a witness with a prior inconsistent statement and leading [an adverse] witness to develop * * * testimony consistent with [the witness's prior] statement." *Id.* at ¶ 32. The present case falls into the former category because unlike *Darkenwald*, the witness here testified inconsistently with his prior written statement and in fact expressly recanted the statement.

{¶18} Evid.R. 607 forbids a party from attacking the credibility of its own witness by means of a prior inconsistent statement absent a showing of surprise and affirmative damage. Surprise exists when the party calling the witness demonstrates that the witness's testimony on the stand "is materially inconsistent with the prior written or oral statements [of that witness] and counsel did not have reason to believe the witness would recant when called to testify." *Darkenwald*, 8th Dist. No. 83440, 2004-Ohio-2693, at ¶ 28, citing *Stearns*, 7 Ohio App.3d 11, 454 N.E.2d 139 (8th Dist. 1982).

{¶19} In the case sub judice, the state cannot make the requisite showing of surprise because the state's own motion in limine demonstrates the state's pretrial knowledge that Taylor had "changed his story." The 1980 staff notes to Evid.R. 607 specifically address the present situation and explain that in the absence of the limitations of Evid.R. 607, a party would be able to "call a known adverse witness

simply for the purpose of getting a prior inconsistent statement into evidence by way of impeachment, thus doing indirectly what he could not have done directly."

{¶20} Pursuant to Evid.R. 607(A), the trial court erred in allowing the prosecutor to read Taylor's prior statement into the record. Though the prosecutor was free to question Taylor by way of leading questions due to his status as an adverse witness, the prosecutor could not circumvent the constrictions of Evid.R. 607(A) and read the statement into evidence under the guise of leading an adverse witness to develop testimony consistent with the witness's prior statement. Here, the state knew prior to trial that Taylor had recanted his earlier statement, the state was not surprised at trial, and in his trial testimony Taylor explained why he had recanted and unequivocally maintained that his earlier statement was fabricated and false. These facts contrast sharply with the situation presented in *Darkenwald*, where "the witness never directly contradicted her statement or recanted her statement; she merely refused to recall the pertinent facts in her original statement." *Darkenwald*, at ¶ 27. To allow the state to read Taylor's statement into the record under these facts was an express violation of Evid.R. 607(A) and error.

{¶21} Furthermore, even if it had been proper for the state to impeach Taylor's testimony with his prior inconsistent statement, "it is well settled in Ohio that under Evid.R. 607, a prior inconsistent statement is only admissible for impeachment of the declarant and not as substantive evidence offered to prove the truth of the matter

asserted." *State v. Coleman*, 8th Dist. No. 94730, 2011-Ohio-709, at ¶ 25, citing *State v. Dearmond*, 179 Ohio App.3d 63, 2008-Ohio-5519, 900 N.E.2d 692 (2d Dist.); *State v. Dick*, 27 Ohio St.2d 162, 165, 271 N.E.2d 797 (1971).

**{¶22}** Taylor's prior out-of-court statement, accepted as substantive evidence in the form of an exhibit by the trial court, qualifies as hearsay. Evid.R. 801(D)(1) is inapplicable because the statement, though inconsistent with Taylor's trial testimony, was not given under oath subject to cross-examination by the party against whom the statement was offered.

**{¶23}** The state argues that the statement was properly admitted into evidence pursuant to the hearsay exception contained in Evid.R. 803(5) for recorded recollections. That exception provides:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

**{¶24}** We have previously held that Evid.R. 803(5) is inapplicable to instances of recanted prior statements. *State v. Bak*, 8th Dist. No. 45108, 1983 WL 5838 (Mar. 10, 1983). Evid.R. 803(5) is inapplicable for two reasons. First, Taylor did not possess "insufficient recollection to enable him to testify fully and accurately." Taylor acknowledged making the prior statement, explicitly recanted it and explained his

self-interested reasons for originally fabricating the statement and his reason for recanting. Secondly, Taylor's testimony established that the statement was inaccurate and did not reflect his knowledge of events correctly. The state's citation to our decision in *State v. Fields*, 8th Dist. No. 88916, 2007-Ohio-5060, is inapplicable because that case did not involve a recanted statement but rather allowed an adverse witness's prior statement to be introduced under Evid.R. 803(5) where the witness's memory failed. *Id*. at ¶ 20. As such, Taylor's prior statement was not admissible pursuant to Evid.R. 803(5).

{¶25} In the absence of a valid hearsay exception, Taylor's prior inconsistent statement was inadmissible as substantive evidence. *State v. Kelly*, 8th Dist. No. 85662, 2006-Ohio-5902, ¶ 28. "An extra-judicial, unsworn, signed statement of a witness which has been denied by the declarant under oath is not admissible as proof of the allegations contained therein." *Dick*, 27 Ohio St.2d 162, 271 N.E.2d 797 (5th Dist.1971), at paragraph one of the syllabus.

{¶26} Appellant's first assignment of error is sustained.

{¶27} Appellant's second assignment of error states:

Insufficient evidence supported [appellant's] adjudication, and the trial court erred by denying his motion to dismiss the charges.

{¶28} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, (superseded by statute and constitutional amendment on other grounds). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."

*State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997)

(Cook, J., concurring).

{¶29} Appellant does not argue that the state failed to present sufficient evidence in regard to any specific element of the crimes for which appellant was adjudicated delinquent. Instead, appellant argues that the only evidence presented by the state linking appellant to the crimes was the improperly admitted, out-of-court statement of Taylor. Appellant argues that because the statement was inadmissible hearsay there was actually no evidence that he committed the offenses.

{¶30} Appellant's argument is without merit pursuant to the Ohio Supreme Court's decision in *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, where the court held that in evaluating the sufficiency of the evidence to support an appellant's conviction, a reviewing court must consider all the testimony that was before the trial court, whether or not it was properly admitted. *Brewer* held, "when evidence admitted at trial is sufficient to support a conviction, but on appeal, some of that evidence is determined to have been improperly admitted, the Double Jeopardy Clauses

of the United States and Ohio Constitutions will not bar retrial." *Id*. at ¶ 25, quoting *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

**{¶31}** In this case, after viewing the admitted evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. For purposes of evaluating the sufficiency of the evidence, we note that if believed, all the testimony that was before the trier of fact, whether or not it was properly admitted, would convince the average mind of appellant's guilt beyond a reasonable doubt. Therefore, while we find that a reversal is necessary based upon trial errors, we do not find that a discharge is warranted based upon insufficient evidence.

**{¶32}** Although not specifically raised by appellant, we do note that the state failed to secure an explicit in-court identification of appellant as the shooter during Taylor's testimony. It is well-settled that, in order to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who actually committed the crime. *State v. Lawwill*, 12th Dist. No. CA2007-01-014, 2008-Ohio-3592, at ¶ 11, citing *State v. Scott*, 3 Ohio App.2d 239, 210 N.E.2d 289 (7th Dist. 1965). However, there is no general requirement that the defendant must be visually identified in court by a witness. Identification can be proved by circumstantial evidence, just like every other element the state must prove. *State v. Kiley*, 8th Dist. Nos. 86726 and 86727, 2006-Ohio-2469.

**{¶33}** In the case sub judice, we find the state's references to "the guy in orange over here" and "[K.S.] sitting over here" along with Taylor's affirmation of the same as the K.S. referenced in his written statement to be particularly poor trial practice; however, sufficient circumstantial evidence of identification. *See Scott*, 3 Ohio App.2d at 244-245, 210 N.E.2d 289 (holding witness's reference to "the defendant here, William Scott" to be sufficient circumstantial evidence of identification.).

**{¶34}** Accordingly, we overrule appellant's second assignment of error.

**{¶35}** Appellant's delinquency adjudications are reversed and this case is remanded for a new trial. Reversing appellant's delinquency adjudications and ordering a new trial renders his third assignment of error challenging the manifest weight of the evidence and his fourth assignment of error asserting ineffective assistance of counsel moot. *State v. Holloway*, 8th Dist. No. 95703, 2011-Ohio-3586, ¶ 28.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
MARY EILEEN KILBANE, J., CONCUR