[Cite as *In re W.K.*, 2013-Ohio-4032.]

# Court of Appeals of Ohio

EIGHT APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99193**

## IN RE: W.K.
## A Minor Child

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12102379

**BEFORE:** Kilbane, J., Jones, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** September 19, 2013

**ATTORNEYS FOR APPELLANT**

Timothy Young
State Public Defender
Charlyn Bohland
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Andrew T. Gatti
Assistant County Prosecutor
9300 Quincy Avenue
Suite 4100
Cleveland, Ohio 44106

MARY EILEEN KILBANE, J.:

{¶1} Appellant, W.K., a minor child, appeals his adjudication of delinquency in juvenile court for burglary and theft. For the reasons set forth below, we reverse and remand.

{¶2} In February 2012, a complaint was filed against W.K., then 16 years old, alleging that he was a delinquent child for committing burglary in violation of R.C. 2911.12(A)(2) (second degree felony) and theft in violation of R.C. 2913.02 (first degree misdemeanor). W.K. denied the allegations in the complaint, and the matter proceeded to an adjudicatory hearing in October 2012. The following evidence was adduced at the hearing.

{¶3} Mitchell Earley ("Earley") testified that on February 8, 2012, he lived in an apartment located on Richfield Road in Cleveland Heights. When he returned to his apartment from work that evening, he found his kitchen window "busted out." Earley testified that he looked through the window and noticed that his apartment was ransacked. He then called the police. Cleveland Heights police officer James Hood ("Hood") responded to the scene. Hood cleared the apartment and took an inventory of the missing items. Earley testified that his TV, DVD player, wallet, old cell phone, medications, jacket, watch, and some liquor bottles were taken from his home. Earley further testified that no one else lives with him in the apartment, and he and the landlord were the only people with keys to the apartment.

{¶4} Hood testified that after he processed the inside of Earley's apartment, he went outside and canvassed the area. Upon doing so, Hood made contact with John Lally ("Lally"), Earley's neighbor. Lally had installed exterior surveillance cameras on the adjacent apartment building, and both Hood and Lally watched the surveillance video. Hood testified that in video, he observed two tall, African American males standing outside in front of Earley's apartment. A few moments later, a third African American juvenile male opened the front door from the inside, and the two other males then entered the apartment. The three males were inside for an unspecified amount of time. The three males then exited, with the juvenile carrying a bag and the two taller males carrying a large object that appeared to be a TV covered in a blanket. Lally testified that he could not identify any of the individuals in the video. He further testified that a group of three or four males entered Earley's apartment and then left.

{¶5} Cleveland Heights Lieutenant Christopher Britton ("Britton") testified that in January and February 2012 there were "a rash of burglaries" taking place in Cleveland Heights. On February 10, 2012, which was two days after the burglary at Earley's, he staked-out an apartment building at Mayfield and Belmar Roads because it was burglarized the previous night. He observed three males walk around the building. These males were arrested for trespassing behind a private apartment building. Britton identified the individuals as 21-year-old Mark Lasiter, W.K., and W.K.'s co-delinquent, D.B. Britton interviewed D.B. in the presence of D.B.'s mother. As a result of the interview, a search was conducted of the duplex where W.K. resides. Two bottles of the

same brands of liquor taken from Earley's home were found in the vacant downstairs portion of the duplex.

**{¶6}** The State then called D.B. to testify.[1] Prior to his testimony, the State advised the trial court that it "anticipates that [D.B.] will be a hostile witness." D.B. testified that he and W.K. hung out together and played on the same football team. He remembered being interviewed by the police after he was arrested on February 10, 2012. The State questioned D.B. about his interview with the police. At first, D.B. stated that his mother was not present at the interview. The State then played a portion of the recorded interview and asked D.B. if his mother was present. D.B. responded, "[y]eah. I might have got mixed up because I got picked up by the police two times."

**{¶7}** The State asked D.B. about what he told the police during the interview. D.B. stated that he did not remember. The State then asked D.B. that if it played the interview, would that "help [D.B.] remember?" D.B. then stated that he told the police that "I broke in some houses[.]" He further stated that he was with W.K. earlier in the day, but only he and another individual, K.W. ("K.W."), broke into the houses. The State asked which day D.B. was referring to, and D.B. responded that he did not remember and did not want to answer any more questions.

**{¶8}** The State then requested that the court deem D.B. as a hostile witness. The trial court granted the State's request. The State again asked D.B. about his interview

---

[1]D.B. pled guilty to burglary and was committed to a juvenile detention center in Columbus, Ohio.

with the police. The State asked if he admitted to the police that he broke into some houses. D.B. responded that he "probably said that but I was probably lying." D.B. testified that only he and K.W. went to Earley's apartment. He then stated that he "plead[s] the fifth" and "[t]ake me back to the looney bin." At that point, the State wanted to play a portion of D.B.'s recorded interview and then asked D.B. "if that's an accurate recitation of his interview[.]" The court allowed the State to play the interview over defense counsel's objection. D.B. admitted that in the interview, he told the police that he, W.K., and K.W. broke into Earley's house. D.B. rang the doorbell to check if anyone was home. He then looked out while someone else broke the back window and unlocked the front door. D.B. then stated that he lied to the police when he implicated W.K. He already had a pending arson charge and wanted to get less time in prison. He testified that he and K.W. took the items stolen from Earley's home to the vacant downstairs unit of W.K.'s home. D.B. further testified that W.K. knew that he brought these items into his home.

{¶9} At the conclusion of the hearing, the trial court adjudicated W.K. delinquent of both the burglary and theft. The court dismissed the theft charge, and on the burglary charge, the court committed W.K. to the legal custody of the Ohio Department of Youth Services for an indefinite term, consisting of a minimum period of 12 months and a maximum period not to exceed W.K.'s attainment of the age of 21 years.

{¶10} W.K. now appeals, raising the following three assignments of error for review. We will address the second assignment of error first, because it is dispositive.

## Assignment of Error One

The juvenile court erred when it permitted the State to impeach its own witness with a prior inconsistent statement without a showing of surprise and affirmative damage, in violation of Evid.R. 607, the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 16 of the Ohio Constitution.

## Assignment of Error Two

The juvenile court violated [W.K.'s] right to due process of law when it adjudicated him delinquent of burglary and theft in absence of sufficient, credible, and competent evidence, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 16 of the Ohio Constitution.

## Assignment of Error Three

The juvenile court violated [W.K.'s] right to due process of law when it adjudicated him delinquent of burglary and theft when the evidence was unreliable and the offenses were not proven beyond a reasonable doubt in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 16 of the Ohio Constitution.

## Sufficiency of the Evidence

**{¶11}** In the second assignment of error, W.K. argues that his right to due process was violated when he was adjudicated delinquent of burglary and theft in the absence of sufficient evidence. The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶12} W.K. was adjudicated delinquent of burglary in violation of R.C. 2911.12(A)(2), which provides that

> [n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

W.K. was also adjudicated delinquent of theft in violation of R.C. 2913.02(A)(1), which

provides that

> [n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]

{¶13} W.K. argues there is insufficient evidence to sustain his burglary and theft

adjudication because there was no evidence linking him to the crime, other than D.B.'s

statement to the police, which he argues was improperly admitted.

{¶14} In *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶

1, the Ohio Supreme Court addressed "whether an appellate court should consider all the

evidence presented by the State in its case in chief or only properly admitted evidence to

determine whether the state has presented sufficient evidence to support a conviction[.]"

The court found that in evaluating the sufficiency of the evidence to support an

appellant's conviction, a reviewing court must consider all the testimony that was before

the trial court, even if it was improperly admitted. *Id.* at ¶ 25. *See also In re K.S.*, 8th Dist. Cuyahoga No. 97343, 2012-Ohio-2388, ¶ 30, citing *Brewer*.

{¶15} In the instant case, after viewing all the evidence, even if it was improperly admitted, in the light most favorable to the State, we conclude that any rational trier of fact could not have found the essential elements of the crimes proven beyond a reasonable doubt. The only evidence linking W.K. to the crime was D.B.'s interview with the police. In that interview, he told the police that he, W.K., and K.W. broke into Earley's house. D.B. rang the doorbell to check if anyone was home. He then looked out while someone else broke the back window and unlocked the front door. At the hearing, D.B. testified that he lied to the police when he implicated W.K. because he already had a pending arson charge and wanted to get less time in prison. He testified that he and K.W. took the stolen items to the vacant downstairs unit of W.K.'s home and W.K. knew that they brought these items into his home. The police then searched W.K.'s home and found two liquor bottles of the same brands that were stolen from Earley's home.

{¶16} This evidence establishes that D.B. committed the burglary and theft. The State presented no evidence that W.K. trespassed in Earley's home, let alone deprived Earley of his property. The surveillance video of the incident does not depict W.K. as one of the perpetrators, because none of the individuals in the video could be identified. In addition, the exact number of individuals involved is uncertain, because Lally testified he observed a group of three or four males and Hood testified he observed three males. Furthermore, there were no identifiable fingerprints or other physical evidence linking

W.K. to the burglary and theft. Finding two bottles of liquor is insufficient to prove the essential elements of the crimes beyond a reasonable doubt, especially in light of D.B.'s testimony that he put the items there with W.K.'s knowledge.

{¶17} Therefore, the second assignment of error is sustained.

{¶18} In the first assignment of error, W.K. argues that the trial court erred when it allowed the State to impeach D.B. with his recorded interview prior to D.B.'s recantation that he lied to the police. In the third assignment of error, W.K. argues that his delinquency adjudication is against the manifest weight of the evidence. However, based on our disposition of the second assignment of error, we overruled the remaining assignments of error as moot. *See* App.R. 12(A)(1)(c).

{¶19} Accordingly, judgment is reversed. The matter is remanded to juvenile court with instructions to vacate W.K.'s delinquency adjudication.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
KENNETH A. ROCCO, J., CONCUR