DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment on a jury verdict in a medical malpractice case heard in the Lucas County Court of Common Pleas. Because we conclude that the trial court's decisions concerning the seating and retention of jurors were proper, we affirm.
 {¶ 2} In 1999, appellant, Teresa Parusel, consulted with appellee, James Ewry, M.D., concerning a suspicious lump in her breast. Appellee examined appellant and concluded that the lump was a benign cyst. When a subsequent mammogram appeared normal, appellee advised appellant to continue monthly self-examinations and repeat the mammogram in a year.
 {¶ 3} A second mammogram 16 months later suggested breast cancer. A biopsy confirmed the presence of cancer. In September 2000, appellee underwent a mastectomy and was subsequently treated with radiation and chemotherapy. Six months after completing this treatment, however, cancer reappeared in other parts of her body. This metastatic cancer, appellant's medical expert testified, will eventually be terminal.
 {¶ 4} On November 3, 2000, appellant sued appellee, alleging that he failed to timely diagnose and treat her breast cancer.[1] The delay, appellant asserted, substantially reduced her chances for survival and her life expectancy. The matter eventually proceeded to trial, following which a jury returned a verdict in favor appellee. In a special interrogatory, the jury found that appellee was not negligent in his treatment of appellant. The trial court entered the judgment on the verdict and this appeal followed. Appellant sets forth the following five assignments of error:
 {¶ 5} "Assignment of Error No. 1
 {¶ 6} "The Common Pleas Court of Lucas County, Ohio erred to the substantial prejudice of Plaintiff-Appellant Teresa Parusel by overruling Plaintiff-Appellant's challenge for cause of a potential juror whose spouse was on the board of directors of Defendant-Appellee's physician practice group, and another potential juror whose son was in fact, at that time, a patient of Dr. Ewry.
 {¶ 7} "Assignment of Error No. 2
 {¶ 8} "The Common Pleas Court of Lucas County, Ohio erred to the substantial prejudice of Plaintiff-Appellant Teresa Parusel by excusing juror number three for cause midway through trial, on grounds that she could not remain fair and impartial towards the Defendant; despite the fact that Defendant-Appellee's case had not yet begun, and the juror had not yet heard any evidence in defense.
 {¶ 9} "Assignment of Error No. 3
 {¶ 10} "The Common Pleas Court of Lucas County, Ohio erred to the substantial prejudice of Plaintiff-Appellant Teresa Parusel by refusing to allow Plaintiff-Appellant's counsel to discuss proposed answers to the juror interrogatories during closing arguments.
 {¶ 11} "Assignment of Error No. 4.
 {¶ 12} "The Common Pleas Court of Lucas County, Ohio erred to the substantial prejudice of Plaintiff-Appellant Teresa Parusel by improperly instructing the jury on a `loss of chance' theory of recovery.
 {¶ 13} "Assignment of Error No. 5
 {¶ 14} "The Common Pleas Court of Lucas County, Ohio erred to the substantial prejudice of Plaintiff-Appellant Teresa Parusel by improperly instructing the jury on comparative negligence, despite the absence of any expert testimony or other evidence of a causal connection between Plaintiff-Appellant's conduct and her terminal prognosis."
 I. Challenge for Cause. {¶ 15} During jury selection, appellant challenged two veniremen for cause. Thomas B. testified that his wife was on the board of directors of the Promedica Health System. Melvin B. reported that he was a patient of one of appellee's practice associates and that his son was a patient of appellee. Nonetheless, Melvin B. testified, this relationship would not affect his impartiality as a juror.
 {¶ 16} Appellant challenged both prospective jurors for cause, arguing that Thomas B. was a spouse of appellee's employer and that Melvin B.'s relationship to appellee's practice made him unlikely to be a fair and impartial juror. The trial court rejected both challenges, forcing appellant to utilize two of his four peremptory challenges on these juror prospects. Appellant, citing McGarry v. Horlacher, 149 Ohio App.3d 33,2002-Ohio-3161, asserts that she was prejudiced by these rulings because they denied her the advantage of preemptory challenges to which she was lawfully entitled.
 {¶ 17} Although the parties agree that the standard of review of a trial court's decision on a juror challenged for cause is abuse of discretion, we do not agree that this is a wholly correct statement of the law.
 {¶ 18} Juror challenges are controlled by two statutes: R.C.2313.42 and 2313.43. In material part, R.C. 2313.42 provides:
 {¶ 19} "The following are good causes for challenge to any person called as a juror:
 {¶ 20} "(A) That he has been convicted of a crime which by law renders him disqualified to serve on a jury;
 {¶ 21} "(B) That he has an interest in the cause;
 {¶ 22} "(C) That he has an action pending between him and either party;
 {¶ 23} "(D) That he formerly was a juror in the same cause;
 {¶ 24} "(E) That he is the employer, the employee, or the spouse, parent, son, or daughter of the employer or employee, counselor, agent, steward, or attorney of either party;
 {¶ 25} "(F) That he is subpoenaed in good faith as a witness in the cause;
 {¶ 26} "(G) That he is akin by consanguinity or affinity within the fourth degree, to either party, or to the attorney of either party;
 {¶ 27} "(H) That he or his spouse, parent, son, or daughter is a party to another action then pending in any court in which an attorney in the cause then on trial is an attorney, either for or against him;
 {¶ 28} "(I) That he, not being a regular juror of the term, has already served as a talesman in the trial of any cause, in any court of record in the county within the preceding twelve months;
 {¶ 29} "(J) That he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court.
 {¶ 30} "Each challenge listed in this section shall be considered as a principal challenged, and its validity tried by the court."
 {¶ 31} R.C. 2313.43 states:
 {¶ 32} "In addition to the causes listed under section2313.42 of the Revised Code, any petit juror may be challenged on suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render him at the time an unsuitable juror. The validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased."
 {¶ 33} The origins of these statutes date to English Common Law. See State v. Sims (1969), 20 Ohio App.2d 329, 331-332. Indeed, with minor language modification, the present statutes are nearly identical to General Code Sections 11437 and 11438. See State v. Ellis (1918), 98 Ohio St. 21, 26-27. The statutes were enacted with the purpose of affording every litigant, "an impartial jury." Lingafelter v. Moore (1917), 95 Ohio St. 384,387.
 {¶ 34} "To safeguard this right and to define in a measure what shall constitute an impartial jury in the trial of civil cases, the general assembly has enacted Sections 11437 [now R.C.2313.42] and 11438 [now R.C. 2313.43], General Code. In the former section are enumerated a number of what are termed good causes for challenge to any person called as a juror for the trial of any cause, and these causes are further referred to in the section as principal causes of challenge. * * *" Id. at 388. While challenges for cause founded in a suspicion of juror prejudice, partiality or a lack of English competency were to be determined in the sound discretion of the court, a different standard was applied to "principal cause[s]." Id. at 389, citingDew v. McDivitt (1876), 31 Ohio St. 139 paragraph one of the syllabus. A "principal cause," if proven to the court, amounted to a per se disqualification. State v. Sims, supra, at 331, citing United States v. Chapman (10C.A. 1946), 158 F.2d 417,419, which, in turn, cites Blackstone's Commentaries (3 Blackstone, 363) for the common law principle that, "* * * a principal challenge carries with it prima facie evidence of favor, which, if true, cannot be overruled."
 {¶ 35} At odds with all of this is the syllabus rule of Berkv. Matthews (1990), 53 Ohio St.3d 161, which holds that, "[t]he determination of whether a prospective juror should be disqualified pursuant to R.C. 2313.42(J) is a discretionary function of the trial court [and] will not be reversed on appeal absent an abuse of discretion." Although subsequent courts have applied the discretionary standard to all of R.C. 2313.42, theBerk syllabus limits its application to R.C. 2313.42(J). Interestingly, part (J) of the statute was not part of the common law, see State v. Ellis, supra, nor did it appear originally in General Code Section 11437. Moreover, Berk relies upon and follows Maddex v. Columber (1926), 114 Ohio St. 178, which discusses both section 11437, General Code (now R.C. 2313.42), and Section 11438, General Code (now R.C. 2313.43). Maddex is not wholly clear, but appears to be referring to the latter statute to which the abuse of discretion standard is applied. See Id. at 183.
 {¶ 36} We view those cases which apply Berk beyond application to section (J) of R.C. 2313.42 as erroneous. The language of R.C. 2313.42 and the common law application of the principles of statute appear to be good law. Two standards, then, emerge: The "good causes" for juror challenge enumerated in R.C.2313.42(A)-(I), if proven, per se disqualify a prospective juror from service. The issue on appeal for decisions concerning these challenges is whether the weight of the evidence presented to the court supports its determination that an R.C. 2313.42(A)-(I) cause has or has not been proven.
 {¶ 37} R.C. 2313.42(J) and 2313.43, to which it is related, are reviewed on an abuse of discretion standard. The trial court's determination must be affirmed absent a finding by the appellate court that the trial court's attitude is arbitrary, unreasonable, or unconscionable. Berk at 169.
 {¶ 38} In the present matter, prospective juror Thomas B. testified that his wife sat on the board of Promedica Health Systems. Appellant argued that, since appellee was a member of a practice which was part of Promedica, Thomas B. was, therefore, a "* * * spouse * * * of the employer * * * of [a] party" as proscribed by R.C. 2313.42(E). Appellee's counsel responded that appellee "* * * is associated with one subcorporation of many corporations involved with Promedica health system. Mr. [B] identified that his wife is a member of the general board not involved in the particular corporation of [appellee]."
 {¶ 39} If Thomas B.'s wife did sit on a board which exercised employer prerogatives with respect to appellee directly or indirectly, then the challenge should be sustained. However, when the statute states that the validity of the challenge is to be tried to the court, this necessarily implies that the proponent of the challenge must present evidence to carry the burden of proof of the "principle challenge" to be established.
 {¶ 40} There was no evidence presented at trial that appellee or his practice was affiliated in any way with Promedica. Presumably, the arguments of appellee's counsel on the motion might be considered some sort of admission of a relationship, but even that was insufficient to establish an employer/employee relationship.
 {¶ 41} Both parties refer to a deposition in which appellee purportedly testified to a link to Promedica, but this deposition was never filed with the court. We are, therefore, unable to ascertain the degree to which this testimony established an employer/employee relationship between prospective juror Thomas B.'s wife's board membership and appellee's practice. In sum, although appellant made the link between the juror and Promedica, she failed to make a link between Promedica and this appellee. Consequently, there was a lack of competent, credible evidence to establish a challenge for good cause under R.C. 2313.42(E).
 {¶ 42} Concerning juror Melvin B., the physician/patient relationship is not one of those enumerated in R.C.2313.42(A)-(I), so the determination for cause is within the court's discretion. Here, the connection between this juror and appellee is somewhat attenuated and Melvin B. testified that it would not affect his impartiality in hearing the case. Given this, we must conclude that the court acted within its discretion in overruling appellant's challenge for cause to prospective juror Melvin B.
 {¶ 43} Accordingly, appellant's first assignment of error is not well-taken.
 II. Juror Dismissal During Trial. {¶ 44} Shortly after testimony began, the bailiff notified the court that one of the jurors had advised him that she could not continue on the panel. With counsel present, the court called the juror, Denise M., into chambers:
 {¶ 45} "THE COURT: Ms. [M.], have a seat. You mentioned something, Ms. [M.] We're here in chambers, and I have just the attorneys, but we're making a record because it's always a very serious matter, jury selection. You made a comment to [the bailiff] which concerns me because we're trying to find —
 {¶ 46} "JUROR NO. 3: Yes.
 {¶ 47} "THE COURT: Fair and impartial jurors here. And you seem to have a problem.
 {¶ 48} "JUROR NO. 3: Right.
 {¶ 49} "THE COURT: What is that?
 {¶ 50} "JUROR NO. 3: Uh, first of all, uh, his client is very evasive on the stand And I know that being that I've worked with doctors, you know, for years. And secondly, I can't be impartial. I can't do it.
 {¶ 51} "My brother — my 35-year-old brother died on my birthday this year of cardiomyopathy, and I just cannot — I — with the two — you know, with the combination of because I can understand his evasiveness, and I was fine with that. You know. That was no problem.
 {¶ 52} "But, you know, when she said what her husband died of and I can understand her pain of his sudden death of not being sick, you know. My brother died in his sleep. Just gone, you know. So —
 {¶ 53} "THE COURT: So you're saying this has all come up since the testimony was just started, not something that you thought of at the time you were being questioned?
 {¶ 54} "JUROR NO. 3: No. No. Like I said, I mean, I understood his client's behavior. And like I said, I was going to go with that. You know. But then as, you know, when he asked, you know, about her husband, and what he died of —
 {¶ 55} "THE COURT: Okay. Let me ask, Ms. [M.], you haven't spoken to any one of the other jurors about your concerns?
 {¶ 56} "JUROR NO. 3: Huh-uh, no."
 {¶ 57} Eventually, over appellant's objection, the court excused Denise M. from the panel and substituted an alternate juror. In explaining its decision, the court stated that it was concerned with a mistrial should Juror 3 continue as a member of the jury. On appeal, appellant contends this ruling was erroneous.
 {¶ 58} As discussed above, the trial court's rulings on the fairness and impartiality of jurors is discretionary, as are the court's rulings concerning the overall conduct of the trial.Marr v. Mercy Hosp. (May 22, 1998), Lucas App. No. L-97-1160. Although appellant argued then and argues now that the juror's feelings were indicative of nothing more than the typical thought processes of jurors during trial, he did nothing to rehabilitate Juror 3. No matter how convoluted the logic, what remained was the juror's statement that she could not be impartial. Uncontroverted, this position would certainly draw into question the fairness of the proceedings. Consequently, we cannot find that the trial court's decision to excuse Juror 3 was unreasonable, arbitrary, or unconscionable. Accordingly, appellant's second assignment of error is not well-taken.
 III. Arguing Interrogatories {¶ 59} During appellant's initial closing argument, the following exchange occurred:
 {¶ 60} "Now there are some interrogatories. Your Honor, may I discuss interrogatories with the jury? Whatever your practice is.
 {¶ 61} "THE COURT: Yes. They'll get that from me.
 {¶ 62} "[APPELLANT'S COUNSEL]: You'll discuss them.
 {¶ 63} "THE COURT: At the appropriate time, yes.
 {¶ 64} "[APPELLANT'S COUNSEL]: Thank you very much."
 {¶ 65} Later, during appellee's summation, counsel for appellant objected to appellee's discussion of special interrogatories:
 {¶ 66} "And the Court's going to instruct you through jury interrogatories what to do if Dr. Ewry is less than 50 percent negligent in this matter. The Court is also going to give you jury instructions on loss of chance recovery. And I struggle with this.
 {¶ 67} "[APPELLANT'S COUNSEL]: I'm going to object. Your Honor.
 {¶ 68} "THE COURT: Overruled.
 {¶ 69} "[APPELLANT'S COUNSEL]: May I approach the bench?
 {¶ 70} "THE COURT: Yes.
 {¶ 71} "(The following discussion was held at the bench.)
 {¶ 72} "[APPELLANT'S COUNSEL]: I apparently misunderstood. When I asked you, I thought we were not allowed to discuss the interrogatories with the jury. You were going to do it then.
 {¶ 73} "THE COURT: Right.
 {¶ 74} "[APPELLEE'S COUNSEL]: I'm not talking about interrogatories, Your Honor.
 {¶ 75} "THE COURT: Do not discuss the interrogatories, no."
 {¶ 76} During appellee's final close, the court again sustained an objection to further discussion of interrogatories.
 {¶ 77} On appeal, appellant contends that the court's denial to the parties of an opportunity to argue the special interrogatories during closing constitutes error.
 {¶ 78} Appellant cites no specific authority in support of this error. Rather, she suggests that since, in general, the purpose of closing arguments is to aid the jury in applying the law to the facts and, since the jury interrogatory is an accepted method of expressing the jury's findings, argumentation to the interrogatories should be allowed.
 {¶ 79} Appellee responds that since both sides were equally denied the opportunity to argue to the interrogatories, no harm resulted even if the court's ruling was erroneous. Civ.R. 61. Moreover, since the jury found no negligence on appellee's part, any error relating to the unutilized interrogatories was harmless. Id. Additionally, if there was error, it was invited. See State ex rel. Klein v. Carroll, 96 Ohio St.3d 404, 489,2002-Ohio-4849 at ¶ 27.
 {¶ 80} Each of appellee's arguments has merit. Accordingly, appellant's third assignment of error is not well-taken.
 Loss of Chance and Comparative Negligence {¶ 81} In her final two assignments of error, appellant complains that the court should not have instructed the jury on comparative negligence or on the "loss of chance" theory of recovery. Since both of the instructions of which appellant complains go to apportionment of negligence or damages and the jury returned an interrogatory finding that appellee was not negligent, the jury would never have needed to reach these issues. As a result, any error in instructing on these issues could not have prejudiced appellee. Consequently, any purported error was necessarily harmless. Accordingly, the fourth and fifth assignments of error are not well-taken.
 {¶ 82} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
Judgment affirmed.
Knepper, Pietrykowski and Singer, J., concur.
[1] The suit also named the radiologist who examined appellee's mammogram as well his professional corporation and the Toledo Hospital as defendants. These were eventually dismissed from the suit by appellant.