DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas in a medical malpractice action in which the court denied the motion for a new trial filed by plaintiffs-appellants Gary and Tammy Tisdale following a jury verdict in favor *Page 2 
of defendant-appellee The Toledo Hospital. Appellants now challenge the denial of their motion for a new trial, as well as the underlying verdict, as follows:
 {¶ 2} "I. Assignment of Error No. 1: The trial court impermissibly refused to excuse a juror who should have been dismissed for cause.
 {¶ 3} "II. Assignment of Error No. 2: By refusing to allocate peremptory jury challenges equally between plaintiffs and defendants, the trial court compromised the plaintiffs' right of peremptory challenge in violation of Ohio constitutional guarantees of jury trial, equal protection, and due process."
 {¶ 4} On August 4, 2003, appellants filed a lawsuit asserting claims of medical negligence and loss of consortium against Toledo Surgical Specialists, Inc., Dr. Jonathan D. Wright, The Toledo Hospital, Anesthesiology Consultants of Toledo, Inc., Dr. Ashraf Banoub, and several other defendants who are no longer relevant to this case. Appellants' claims originated out of the care that Gary Tisdale received after a hernia operation performed by Dr. Wright at The Toledo Hospital on August 5, 2002, and during which Dr. Banoub was the anesthesiologist. Although both Drs. Wright and Banoub ordered the use of external leg cuffs on Gary Tisdale's legs to prevent blood clots from forming (a condition known as deep vein thrombosis or DVT), a clot nevertheless formed and traveled to Gary's lungs causing a pulmonary embolism and resulting in brain damage and blindness. The Tisdales alleged that the cuffs were never put into place by the nursing staff of The Toledo Hospital and that Gary's injuries resulted from this oversight. *Page 3 
 {¶ 5} Prior to trial, appellants voluntarily dismissed Dr. Banoub and Anesthesiology Consultants of Toledo as defendants in the case. Dr. Banoub, however, remained on the witness list. Then, two days after the start of the trial, appellants stipulated to the dismissal with prejudice of all claims against Dr. Wright and Toledo Surgical Specialists, Inc. The Toledo Hospital remained the only defendant for the duration of the trial. At the conclusion of the trial, the jury found in favor of The Toledo Hospital and against appellants. In answering interrogatories, however, the jury concluded that while The Toledo Hospital was negligent, its negligence was not a proximate cause of Gary Tisdale's injuries.
 {¶ 6} Thereafter, appellants filed a motion for a new trial in which they asserted that they had been denied a fair trial during the jury selection process. Relevant to the issues now before us on appeal, appellants asserted that the court denied them their right to a fair and impartial jury by refusing to grant them the same number of peremptory challenges as the combined defendants and by refusing to grant their challenge for cause to remove juror number five, Ms. D., from the panel. Because the trial court denied their challenge for cause, appellants were forced to use one of their three peremptory challenges to remove Ms. D. from the jury panel.
 {¶ 7} In an opinion and judgment entry of August 14, 2007, the lower court denied the motion for a new trial. In pertinent part, the court concluded that because the defenses of Dr. Wright and his employer, Toledo Surgical Specialists, Inc., were distinct *Page 4 
from those of The Toledo Hospital, the defendants were entitled to a combined total of six peremptory challenges and appellants were entitled to three. On the issue of appellants' challenge for cause to remove Ms. D. from the jury panel, the court determined that despite her employment history, the voir dire demonstrated that she could have been a fair and impartial juror. Appellants now challenge the trial court's denial of their motion for a new trial, as well as the underlying verdict, on appeal.
 {¶ 8} In their first assignment of error, appellants challenge the trial court's denial of their request to remove juror Ms. D. for cause. Appellants challenged Ms. D. for cause, asserting that she had an interest in the case, her relationship to the defendant hospital was tantamount to being an employee or agent of the hospital, and that she admitted she could not be an impartial juror. This challenge was based on Ms. D.'s responses to questioning during voir dire. Ms. D. revealed that she is a nurse anesthetist and that although she is not employed by The Toledo Hospital, she has worked there for 30 years and has worked with Dr. Wright. Initially, Ms. D. stated that she believed she could be fair and impartial and could set aside any previous opinions she may have had regarding Dr. Wright and base her opinion solely on what she heard from the witness stand. Subsequently, however, she revealed that her employer is Anesthesiology Consultants of Toledo, the group that also employs Dr. Banoub. Anesthesiology Consultants of Toledo and Dr. Banoub had both been named defendants in this case and, although both had been dismissed, Dr. Banoub was still on the witness list as he had *Page 5 
administered the anesthesia to Gary Tisdale during the operation at issue. The court then questioned Ms. D. as follows:
 {¶ 9} "THE COURT: Let me ask the ultimate question. This is what we are going to — as to whether you can listen to all the evidence regardless of whether you may have been acquainted or had some working relationship to any individual that may — that may be called — and I use that — if you make the assumption that after you have listened to all of the evidence that was presented and you and your fellow jurors and the recognizant numbers decided that yes, the Toledo Hospital was negligent, yes, Dr. Wright was negligent, and that you would be responsible for returning verdicts against those folk accordingly, knowing that you had to go back to the work place where you would see some of these individuals and some would know that — let's make the assumption that they all know about it and you — would that fact and that appreciation, would that adversely effect your ability to be able to consider the evidence and to be able to render verdicts based on that evidence despite the fact that you may be acquainted in some fashion with individuals from one of the entities that is involved here?
 {¶ 10} "MS. D[.]: It just seems like it's going to become a conflict of interest, you know, when — I don't think I would feel any differently going back to work in my setting.
 {¶ 11} "THE COURT: Yes.
 {¶ 12} "MS. D[.]: But I just feel in discussion here that it's a conflict of interest if, you know, one of my bosses is called, not that I would, you know, weigh — say definitely *Page 6 
he is 100 percent right, you know, he still — because it's not in my field per se, you know? It's totally a different field, but I just kind of sense, you know, a conflict of interest here."
 {¶ 13} Appellants' counsel then continued the voir dire of Ms. D.:
 {¶ 14} "MR. WEINBERGER: And when you talk about the conflict of interest that you have, it's a conflict because after all — and, you know, I mean I certainly understand your situation having spent 30 years at Toledo Hospital working in the operating room, that it would be difficult for you to not believe the witnesses that are brought on behalf of the hospital because you have worked with many of them over the years, right?
 {¶ 15} "MS. D[.]: Probably so.
 {¶ 16} "MR. WEINBERGER: So as you now search your mind, Mrs. D[.], do you believe that you really, shouldn't serve on the jury because of these issues?
 {¶ 17} "MS. D[.]: Probably so."
 {¶ 18} Appellants' counsel then moved to exclude Ms. D. from the venire. The court denied the motion and the questioning continued as follows:
 {¶ 19} "THE COURT: The Court understands the issues that have been presented, but the ultimate question as you are already forewarned about these potential kinds of issues, whether you could set aside any of the experiences and the knowledge as a result of the work that you do, set that aside and listen to the evidence that is presented, and in discussion with your fellow jurors be confined to just that evidence as presented and *Page 7 
render verdicts accordingly applying instructions of law that the Court would give. Would you be able to do that?
 {¶ 20} "MS. D[.]: I believe I can do that, listen to the testimony. I know that my experience — you know, I have been through a lot of cases, you know, where many-perhaps the same type of, you know, case, but I would, you know, hope that I would be able to just, you know, do my job, listen to it and not favor one side or the other.
 {¶ 21} "* * *
 {¶ 22} "MR. WEINBERGER: So the — again, because of what you said about the fact that you believe that you have a conflict of interest and because of the fact that you have this wealth of experience, wouldn't it be difficult for you to decide this case without regard to your own personal experiences in the operating room?
 {¶ 23} "MS. D[.]: I guess I feel my personal experiences in the operating room in this — at least — I mean I feel I have the background knowledge to kind of see what is right and what is wrong with the knowledge that I have of, you know, what is going to be presented.
 {¶ 24} "* * *
 {¶ 25} "MR. WEINBERGER: Wouldn't it be difficult for you to set aside what you know about that and judge this case without regard to what your own personal knowledge is?
 {¶ 26} "MS. D[.]: I don't believe so. *Page 8 
 {¶ 27} "MR. WEINBERGER: When you indicated before that you have a — you feel that you are in a conflict what do you mean?
 {¶ 28} "MS. D[.]: Well, I guess that was pretty much when you — as far as Dr. Banoub, you know, testifying, whatever, I mean he is my boss, one of my bosses. That's not to say that we all feel the same way, all have the same ideas. I mean I guess that pretty much is conflict of interest since he is in my specific field.
 {¶ 29} "MR. WEINBERGER: And because of that conflict of interest and the possibility that he is not only going to be a witness in this case but there are orders that he wrote in this case, would you have difficulty judging his conduct without regard to the fact that you know him, and that you have had experiences with him?
 {¶ 30} "MS. D[.]: No.
 {¶ 31} "MR. WEINBERGER: Well —
 {¶ 32} "MS. D[.]: I mean — I know it sounds — yeah. As far as his conduct I mean that whether — I guess it intimidates me a little bit that, you know, he is my boss and that, but whether you — if he gave a wrong — it's not I would agree with exactly what he says or everything he says.
 {¶ 33} "MR. WEINBERGER: With respect to the fact that he is your boss, wouldn't that influence the way in which you would judge his conduct in this case, his testimony, his orders, whatever?
 {¶ 34} "MS. D[.]: I would say no, but then human nature, I don't know." *Page 9 
 {¶ 35} Ms. D. then responded that if she participated in a verdict for appellants, she did not believe she would be criticized for that upon her return to work. Subsequently, appellants challenged Ms. D. for cause, but the court overruled the challenge. As a result, appellants were forced to exercise one of their peremptory challenges to remove Ms. D. from the jury.
 {¶ 36} Appellants now assert that they were prejudiced by the lower court's denial of their challenge for cause. The denial prejudiced them, they contend, because they were required to use a peremptory challenge to prevent Ms. D. from being seated on the jury and, therefore, were deprived of the opportunity to use a peremptory challenge to remove Ms. C. from the venire. Ms. C. had previously worked as a nurse at The Toledo Hospital and was ultimately seated on the jury. In support of their argument, appellants cite McGarry v. Horlacher,149 Ohio App.3d 33, 38, 2002-Ohio-3161, ¶ 14, in which the court held that "[t]he erroneous denial of a challenge for cause may be prejudicial because it forces a party to use a peremptory challenge on a prospective juror who should have been excused for cause, giving that party fewer peremptories than the law provides."
 {¶ 37} Juror challenges are controlled by two statutes, R.C. 2313.42
and 2313.43. R.C. 2313.42 provides in relevant part:
 {¶ 38} "The following are good causes for challenge to any person called as a juror:
 {¶ 39} "* * * *Page 10 
 {¶ 40} "(B) That he has an interest in the cause;
 {¶ 41} "* * *
 {¶ 42} "(E) That he is the employer, the employee, or the spouse, parent, son, or daughter of the employer or employee, counselor, agent, steward, or attorney of either party;
 {¶ 43} "* * *
 {¶ 44} "(J) That he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court.
 {¶ 45} "Each challenge listed in this section shall be considered as a principal challenge, and its validity tried by the court."
 {¶ 46} R.C. 2313.43 then provides:
 {¶ 47} "In addition to the causes listed under section 2313.42 of the Revised Code, any petit juror may be challenged on suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render him at the time an unsuitable juror. The validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased."
 {¶ 48} As we stated in Parusel v. Ewry, 6th Dist. No. L-02-1402,2004-Ohio-404, ¶ 36-37, two standards have emerged from these statutes. "The `good causes' for juror challenge enumerated in R.C. 2313.42(A)-(I), if proven, per se disqualify a prospective *Page 11 
juror from service. The issue on appeal for decisions concerning these challenges is whether the weight of the evidence presented to the court supports its determination that an R.C. 2313.42(A)-(I) cause has or has not been proven. R.C. 2313.42(J) and 2313.43, to which it is related, are reviewed on an abuse of discretion standard. The trial court's determination must be affirmed absent a finding by the appellate court that the trial court's attitude is arbitrary, unreasonable, or unconscionable." Id. citing Berk v. Matthews (1990), 53 Ohio St.3d 161,169.
 {¶ 49} In the present case, appellants challenged Ms. D. for cause under R.C. 2313.42(B) and (E), and under R.C. 2313.42(J) and 2313.43. Appellants, however, provided no incontrovertible evidence that Ms. D. had an interest in the case or was in fact an employee, agent or steward of The Toledo Hospital or Dr. Wright. That is, although Ms. D. worked at The Toledo Hospital for 30 years, she was not an employee, agent or steward of the hospital.
 {¶ 50} Our focus, therefore, falls to appellants' arguments pursuant to R.C. 2313.42(J) and 2313.43 that Ms. D. disclosed by her answers that she could not be a fair and impartial juror or entirely unbiased. A review of the transcript from the jury voir dire reveals that Ms. D.'s responses are inconsistent. They fluctuate from "I believe I can be, you know, fair and impartial" to "I just kind of sense, you know, a conflict of interest here" and "I guess it intimidates me a little bit that, you know, he is my boss and that" (referring to Dr. Banoub, her employer, as a potential witness). Although the trial court *Page 12 
tried to rehabilitate Ms. D., lingering doubts exist regarding whether she could be entirely unbiased given Ms. D.'s own sense of a conflict of interest and extensive contacts with the remaining defendants and witnesses. As a juror, Ms. D. would have been required to judge the credibility of people she had worked with for many years, including, possibly, her immediate boss. See McGarry, supra ¶ 23 ("[I]t is axiomatic that [plaintiff] was entitled to jurors who were free from personal relationships with [defendant], and we are somewhat baffled by the trial court's determination not to excuse [juror] for cause in light of the information presented during voir dire about her relationship with [defendant].")
 {¶ 51} In light of the uncertainty that remained regarding Ms. D.'s own assessment of her ability to be entirely unbiased and that numerous potential jurors remained available for voir dire questioning, we find that the lower court was unreasonable and abused its discretion in denying appellants' motion to excuse Ms. D. from the jury for cause. The first assignment of error is therefore well-taken.
 {¶ 52} In their second assignment of error, appellants challenge the trial court's order giving them only three peremptory challenges while the defendants were allowed a total of six peremptory challenges. Appellants assert that this discrepancy violated their constitutional rights to due process and equal protection.
 {¶ 53} Because The Toledo Hospital is the only remaining defendant in the case, this will not be an issue should the case again go to trial upon remand. Accordingly, we need not address the second assignment of error and find it moot. *Page 13 
 {¶ 54} On consideration whereof, the court finds that substantial justice has not been done the parties complaining and the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to that court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR. *Page 1