[Cite as *Garry v. Borger*, 2023-Ohio-905.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PATRICIA GARRY, | : | APPEAL NO. C-220069 |
| | | TRIAL NOS. A-1800062 |
| Plaintiff-Appellant, | : | A-1806668 |
| vs. | : | *O P I N I O N*. |
| JOSEPH BORGER, | : | |
| Defendant-Appellee, | : | |
| and | : | |
| JILL SIMS, et al. | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 22, 2023

*Jennifer K. Nordstrom* and *Christopher T. Brann*, for Defendant-Appellee,

*Paul Croushore*, for Plaintiff-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Plaintiff-appellant Patricia Garry ("Garry") appeals the trial court's denial of her motion for a new trial under Civ.R. 59. For the following reasons, we affirm.

## I.     Factual and Procedural History

{¶2} An automobile accident on Hunley Road in Anderson Township gave rise to the present legal action. Shortly before midnight on December 16, 2016, defendant-appellee Joseph William Borger was driving home from a friend's house in wintry conditions. At the same time, Dylan Schube and Josh Sims were stopped in their vehicle in a lane of traffic on Hunley Road, unable to climb a hill due to the ice and rain. Schube's passenger Sims stepped out of the vehicle and began pushing the car from behind. When Borger came around a blind curve in the road, he saw Schube's vehicle stopped ahead and crossed the center line into oncoming traffic. At the same time, Patricia Garry was a passenger in a vehicle traveling the opposite direction on Hunley Road. As Borger crossed the center line, his car and the car Garry was in collided head on, resulting in Garry suffering from a broken arm and post-traumatic stress disorder ("PTSD").

{¶3} Plaintiff-appellant Patricia Garry filed a complaint against defendant-appellees Joseph William Borger and Joseph M. Borger ("father") asserting claims of negligence and gross negligence against Borger and negligent entrustment against his father.

{¶4} During the jury selection process, there was dispute as to two of the prospective jurors' ability to effectively serve on the jury. Juror No. 984949 ("Juror A") answered her questionnaire indicating that she "did not like cops" and believed that the "judicial system" is "corrupt and racist." Juror No. 950171 ("Juror B") taught a class in

the evenings on Tuesday and Thursday of each week and therefore would need to leave by 3:00 p.m. on those days.

{¶5}    Garry argued that the court should have excused both of these jurors for cause as Juror A could not be fair and impartial, and Juror B was unable to serve during the time allotted for trial.  Specifically, Garry argued that this new time restraint imposed by including Juror B would materially interfere with her coordination of witnesses and presentation of her case-in-chief.  Therefore, Garry asked for the two jurors to be removed for cause.

{¶6}    Regarding Juror A, the trial court determined that she could be an effective juror and that any biases that she may have had were not relevant in this civil case.  Furthermore, regarding Juror B, the trial court found that the trial's schedule would not be greatly affected by this potential juror's scheduling restraint.  As a result of the trial court's decision not to excuse these jurors for cause, Garry chose to use two of her three preemptory challenges to remove them, noting on the record that she would have preferred to use these challenges on other jurors if the court had removed them for cause.

{¶7}    Importantly, the trial was only to determine Garry's noneconomic damages, as she chose not to claim her medical expenses and dismissed her claims for economic damages.  Prior to trial, Borger stipulated that his negligence "was the sole proximate cause of the December 16, 2016, car accident involving Patricia Garry" and that "no evidence or argument will be presented at trial that anyone other than Joseph W. Borger is responsible for the December 16, 2016, car accident."  In exchange, Garry agreed to withdraw her claim for punitive damages.  Therefore, this trial focused solely on the noneconomic damages to be awarded.  The jury instructions specifically noted the stipulation of liability as follows:

3

Defendant Joseph Borger's negligence was the sole cause of the crash on December 16, 2016, and that Defendant Joseph Borger's admitted negligence was the proximate cause of some injury to Plaintiff Patricia Garry.

{¶8} Borger also consistently maintained throughout the trial in accordance with the stipulation that the accident was his fault, both during direct and cross-examination. However, Borger did testify, consistent with his deposition, that there was a pedestrian in the roadway which led to his decision to cross the center line into oncoming traffic. Borger stated the following about how the accident occurred during direct examination:

Q. Tell the jury how the accident happened.

A. Sure. So I was on Hunley, and I reached a blind turn. And as I was going up around that blind turn -- or blind curve, I noticed there was a pedestrian in the road along with a stopped Jeep, and I applied my brakes. And when I realized I was sliding, not going to be able to stop in time, I went left of center to avoid hitting the pedestrian. And as I went left of center, that's when the Kia Soul was oncoming and we collided head-on.

* * *

Q. What caused you to decide to steer left of center when you weren't stopping?

A. Because there was a pedestrian in the road and I did not want to hit them.

{¶9} After the defense rested, Garry sought to adduce the testimony of Deputy Hicks of the Hamilton County Sherriff's Office, who was one of the officers that investigated the accident in question. Deputy Hicks had previously stated in an affidavit

4

that "Joseph Borger described the crash to me, but he did not tell me that he had slowed or swerved to avoid a pedestrian in the roadway." Therefore, Garry sought to call Deputy Hicks both as a rebuttal witness and for the purpose of impeaching Borger, because at the time of the accident, Borger had not told police that he had seen a pedestrian. Notably, the issue of whether a pedestrian was actually in the road was not disputed, as both sides acknowledged that Sims had been in the road attempting to push Schube's vehicle. The disagreement centered on whether Borger had seen the pedestrian as well as the vehicle before crossing the center line.

{¶10} The court held that there was no prior inconsistent statement to dispute because Borger was never questioned about what he told Deputy Hicks. Therefore, because there was no inconsistent statement, there was no rebuttal evidence allowed under Evid.R. 613(B). The trial court noted that if Borger had denied making a statement, then Deputy Hicks's testimony would have been appropriate for rebuttal.

{¶11} Ultimately, following a five-day jury trial, the jury delivered a verdict in favor of Garry for damages related to her broken arm and PTSD. The total verdict was for $45,000, which included $30,000 for pain and suffering, $10,000 for loss of enjoyment of life and the inability to perform usual activities, and $5,000 for disfigurement from the broken arm and necessary surgical repair. Garry subsequently moved for a new trial under Civ.R. 59 "because there were errors of law and irregularities in the proceedings that allowed evidence to go uncontroverted that, in fact, did inflame juror passions leading to an inadequate verdict." Borger filed a memorandum in opposition. The trial court denied Garry's motion for a new trial and entered the judgment, which is the subject of Garry's appeal to this court.

## II.     Assignments of Error

**{¶12}**  Garry brings three assignments of error in her appeal.  In her first assignment of error, Garry argues that "[t]he trial court abused its discretion in denying Plaintiff's Motion to Strike two jurors: one was unable to be impartial and the other had a departure deadline which would have interfered with his ability to serve, resulting in prejudice."  In her second assignment of error, Garry asserts that "[t]he trial court [erred] in disallowing impeachment of defendant when [Mr. Borger] offered evidence contradicting his explicit stipulation which excused his negligence and aroused juror sympathy."  Finally, for her third assignment of error, Garry stated that "[t]he cumulative effect of the trial court's errors mandates a new trial."

## III.     Law and Analysis

### A.  First Assignment of Error

**{¶13}**   In her first assignment of error, Garry argues that the trial court abused its discretion in denying her motions to strike the two jurors, which resulted in Garry exercising two peremptory challenges that otherwise would have been used on other jurors.

**{¶14}**  An appellate court reviews the trial court's decision as to a juror's ability to be impartial for an abuse of discretion.  *State v. Tyler*, 50 Ohio St.3d 24, 31, 553 N.E.2d 576 (1990), citing *State v. Wilson*, 29 Ohio St.2d 203, 211, 280 N.E.2d 915 (1972);  *see State v. White*, 1st Dist. Hamilton No. C-150250, 2016-Ohio-3329, ¶ 35.  A trial court has broad discretion in determining whether to remove a prospective juror for cause.  *Gurley v. Nemer*, 9th Dist. Summit No. 21965, 2004-Ohio-5169, ¶ 5.  A trial court's ruling on a challenge for cause will therefore not be disturbed on appeal absent an abuse of discretion.  *Id.* at ¶ 6.  The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301

6

(1990). When applying this standard, an appellate court may not substitute its judgment for that of the trial court. *Id.* "The decision not to remove a potential juror for cause is a matter within the sound discretion of the trial court." *State v. Person*, 174 Ohio App.3d 287, 2007-Ohio-6869, 881 N.E.2d 924, ¶ 29 (1st Dist.).

{¶15} First, Garry asserted that Juror A could not be fair and impartial. R.C. 2313.17 governs challenges of jurors for cause. As applicable here, R.C. 2313.17(B)(9) provides that a prospective juror may be excused for cause when that person "discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court." In addition, R.C. 2313.17(B)(9) "requires the court to make a subjective determination about a potential juror's fairness and impartiality and therefore requires the exercise of judicial discretion." *Hall v. Banc One Mgmt. Corp.*, 114 Ohio St.3d 484, 2007-Ohio-4640, ¶ 1. "The determination of whether a juror is impartial or biased involves a judgment of credibility, which may not be apparent from the record on appeal. Therefore, a reviewing court will defer to the trial judge who sees and hears the juror." *Hunt v. E. Cleveland*, 8th Dist. Cuyahoga No. 105953, 2019-Ohio-1115, ¶ 37.

{¶16} In the present case, Juror A expressed in her questionnaire that she "did not like cops" and believed that the "judicial system" is "corrupt and racist." However, the juror assured the court that she could listen to evidence from both sides with impartiality and that she would follow instructions given by the court. *See Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990) (assurances from a juror that she could be impartial and would follow the law were material). After interviewing this juror, the trial court was convinced that she would make an effective juror and that any bias she may have would not be relevant in the present civil case. The juror also expressed some trepidation about making a judgment in the case, but the court noted that it believed this

represented an ability to appreciate the seriousness of the task at hand and would make her an attentive juror.

{¶17} Garry relies on *Tisdale v. Toledo Surgical Specialists, Inc.*, 6th Dist. Lucas No. L-07-1300, 2008-Ohio-6539, to support her position. In *Tisdale*, a party moved to strike a prospective juror due to an inability to be impartial and fair in deliberation. *Id.* The question of impartiality in *Tisdale* stemmed from the fact that the juror had worked at the defendant hospital for decades and had worked closely with various defendants and key witnesses, including her immediate superior. *Id.* However, *Tisdale* is clearly distinguishable in the severity of the potential bias present. In the present case, Juror A expressed general negative feelings about police and the judicial system. While this may have warranted further discussion with counsel and the court to ensure she could be impartial, it is clearly distinguishable from the direct conflicts of interest addressed in *Tisdale*.

{¶18} The present case bears a closer resemblance to *Long v. Harding*, 12th Dist. Butler No. CA2020-11-120, 2021-Ohio-4240, where the prospective juror indicated that he believed some personal-injury litigants used the process "as a way to get money" and sometimes used the system to their advantage. *Id.* at ¶ 18. The *Long* court denied the challenge for cause because "[w]hile [the prospective juror] expressed skepticism regarding potential fraudulent claims and resulting damage awards, she never stated she could not be impartial." *Id.* The *Long* court noted that her answers were an "implicit recognition that a plaintiff bears the burden of proof and disclosed her intent to scrutinize evidence rather than blindly accept it." *Id.* at ¶ 23. Because the trial court was in the best position to observe the juror's demeanor and judge her ability to be impartial, the appellate court did not find an abuse of discretion. *Id.* at ¶ 24.

{¶19} In *State v. Person*, this court found that a prospective juror who admitted that he had already decided the defendant was guilty due to a newspaper article could be rehabilitated through extensive questioning of counsel and the court as well as an attestation that he would be "fair and impartial." *Person*, 174 Ohio App.3d 287, 2007-Ohio-6869, 881 N.E.2d 924, at ¶ 30. "While [the prospective juror] conceded that he had formed an opinion about the case, he also said that the opinion was based on an incomplete account, that he would listen to both sides, and that he would apply the applicable law as it was given to him." *Id.* at 31. These assurances were sufficient to conclude that the trial court had not abused its discretion in refusing to remove the prospective juror for cause. *Id.*

{¶20} Viewing the totality of the voir dire proceedings and considering the deference to which the trial judge is entitled in seating a jury, the trial court did not abuse its discretion when it refused to excuse Juror A for cause.

{¶21} Regarding Juror B, Garry argued that a scheduling conflict that would require him to leave by 3:00 p.m. on Tuesday and Thursday made him unfit to serve on the jury. Garry asserted that this new time constraint "materially interfered with her coordination of material witnesses and her ability to present her case in chief through witnesses, given their schedules."

{¶22} In the trial court's entry denying plaintiff's Civ.R. 59 motion for a new trial, it provided the following reasoning for not dismissing Juror B:

> [T]he Court did not limit the amount of days the trial could commence and the parties were permitted to present witnesses by Zoom. This Court allows witnesses to be taken out of turn. There are numerous time impediments that cannot even be anticipated in any given trial, particularly

in the midst of a global pandemic, but the Court was confident that the trial's schedule would not be greatly affected by this potential juror.

**{¶23}** The appellate court must defer to the trial court unless its actions are deemed "unreasonable, arbitrary or unconscionable." *Berk*, 53 Ohio St.3d at 169, 559 N.E.2d 1301. A decision is made arbitrarily when "made without consideration of or regard for facts [or] circumstances." *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12, quoting *Black's Law Dictionary* 96 (5th Ed.1979). Notably, even though Juror B was dismissed via a peremptory challenge, the record reflects that the trial adjourned before 3:00 p.m. on those two days that the potential juror would have needed to leave early to teach his class. Given the trial court's reasoning and the modest imposition on scheduling, it cannot be said that the decision to not dismiss Juror B was "unreasonable, arbitrary or unconscionable." *Id.* Therefore, the trial court did not abuse its discretion when it refused to excuse Juror B for cause.

**{¶24}** Accordingly, the first assignment of error is overruled.

## B. Second Assignment of Error

**{¶25}** In her second assignment of error, Garry argues that the trial court abused its discretion in denying her attempt to call Deputy Hicks as a rebuttal witness and to impeach the testimony of Borger. In order to reverse the decision of the trial court concerning admission or exclusion of evidence, this court must find both an abuse of discretion and proof of material prejudice. *Ijakoli v. Alungbe*, 1st Dist. Hamilton No. C-210366, 2022-Ohio-2423, ¶ 26. An abuse of discretion prejudices a party when it affects a substantial right. *See* Evid.R. 103(A). "In other words, the exclusion must have 'affected the final determination of the proceeding.' " *Ijakoli* at ¶ 29, quoting *Buckmaster v. Buckmaster*, 4th Dist. Highland No. 13CA13, 2014-Ohio-793, ¶ 23.

**{¶26}** Rebuttal evidence is that which is given to explain, refute, counteract, or disprove facts given in evidence by the adverse party. *State v. Bowman*, 144 Ohio App.3d 179, 186, 759 N.E.2d 856 (12th Dist.2001), citing *State v. McNeill*, 83 Ohio St.3d 438, 446, 700 N.E.2d 596 (1998). Rebuttal evidence becomes relevant only to challenge the evidence offered by the adverse party, and such evidence is limited in scope to serve that purpose. *McNeill* at 446. The admission or exclusion of rebuttal testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Id.*

**{¶27}** Garry asserts that the statements made by Borger were "highly prejudicial" and resulted in an "insufficient verdict" that was "not based on actual evidence" but instead resulted from the "unchecked arousal of juror passions." Further, Garry argues that Borger engaged in "juror nullification," which she defines as "where a party implies or insinuates excuse from the law hoping that jurors will ignore the law or jury instructions and act on their prejudices or passion." Therefore, Garry argues the rebuttal testimony of Deputy Hicks was necessary to combat this prejudicial effect on the jury. Garry argues that "[w]hile Borger did not expressly say 'it was the pedestrian's fault,' his testimony clearly implied that he had no choice but to hit Ms. Garry." Significantly, Borger, in his testimony during direct examination, admitted that he was at fault, including conceding that his speed and inability to stop was the reason that he crossed the center line:

Q: Joseph, do you know whose fault the accident was?

A. It was mine.

Q. And you understand now that you were driving too fast for the icy road?

A. Yes.

Further, during cross-examination, Garry's counsel asked the following:

Q: And you agree that the reason that you were going to hit the pedestrian, as you say, is because you were not leaving enough room in front of your vehicle to safely stop if you encountered a hazard in the roadway?

A: Correct.

{¶28} The assertion that Borger abdicated responsibility in his testimony does not align with the record. Thus, the trial court cannot be said to have abused its discretion in excluding this evidence. *See State v. Dubose*, 1st Dist. Hamilton No. C-070397, 2008-Ohio-4983, ¶ 69.

{¶29} Even still, it is possible that Deputy Hicks's testimony should have been admitted for impeachment. A statement made by Borger to police after the accident would constitute a prior inconsistent statement and therefore be governed by Evid.R. 613(B) for the purposes of impeachment. *See State v. Dearmond*, 179 Ohio App.3d 63, 2008-Ohio-5519, 900 N.E.2d 692, ¶ 4 (2d Dist.); *State v. Scheidel*, 165 Ohio App.3d 131, 2006-Ohio-195, 844 N.E.2d 1248, ¶ 16 (11th Dist.); *State v. Holmes*, 30 Ohio St.3d 20, 23, 506 N.E.2d 204 (1987). Under Evid.R. 613(B), extrinsic evidence of prior inconsistent statements is admissible only if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B)

**{¶30}** The first requirement for impeachment with a prior inconsistent statement, as stated above in Evid.R. 613(B)(1), is that a witness must be afforded an opportunity to explain or deny a prior inconsistent statement before extrinsic evidence of that statement is admissible. *State v. Weathersby*, 1st Dist. Hamilton No. C-971055, 1998 Ohio App. LEXIS 5762 (Dec. 4, 1998). However, as the trial court noted, "[d]efendant was never questioned about his non-statement to Hicks, thus he never denied making the statement." Borger was never asked whether he did or did not tell Deputy Hicks about a pedestrian. Therefore, as identified by the trial court, the first requirement under Evid.R. 613 has not been satisfied and the extrinsic evidence for impeachment was correctly excluded.

**{¶31}** Therefore, we cannot hold that the trial court abused its discretion in denying Garry's attempt to call Deputy Hicks as a rebuttal witness to impeach the testimony of Borger.

## C. Third Assignment of Error

**{¶32}** Finally, in her third assignment of error, Garry argues that the cumulative effect of the trial court's errors deprived her of a fair trial.

**{¶33}** Under the doctrine of cumulative error, "a judgment may be reversed if the cumulative effect of multiple errors deprives a defendant of his constitutional rights even though, individually, the errors may not rise to the level of prejudicial error or cause for reversal." *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 12AP-999, 2013-Ohio-5140, ¶ 124, citing *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

However, "the cumulative error doctrine is not typically employed in civil cases." *Id.* In addition, "the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent." *State v. Adkins*, 2020-Ohio-1618, 153 N.E.3d 970, ¶ 66 (8th Dist.), quoting *State v. Shine*, 2018-Ohio-1972, 113 N.E.3d 160, ¶ 141 (8th Dist.).

**{¶34}** The cumulative error doctrine is not typically employed in civil cases, and even if it were applied, the present case lacks the numerous errors necessary to rise to the level of cumulative error. *See State v. Hinkle*, 3d Dist. Hardin No. 6-20-02, 2020-Ohio-5571, ¶ 70. The above analysis does not support a finding of error and thus cannot constitute the "numerous instances of trial court error" necessary for cumulative error. *See State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 57 (1st Dist.).

## D. Conclusion

**{¶35}** The trial court did not err when it denied plaintiff-appellant Garry's motion for a new trial under Civ.R. 59. Therefore, Garry's three assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.